[No. S133850. July 13, 2006.]

ISOFEA PILIMAI, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE COMPANY, Defendant and
Respondent.

## COUNSEL

Clayeo C. Arnold, Anthony M. Ontiveros; and Leslie M. Mitchell for Plaintiff and Appellant.

Frank M. Pitre and Steven G. Ingram for the Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Rust, Armenis, Schwartz, Lamb & Bills, Brian Turner; Horvitz & Levy, David M. Axelrad, Daniel J. Gonzalez; King Warwick & Sanders and Michael A. King for Defendant and Respondent.

Ropers, Majeski, Kohn & Bentley, Mark G. Bonino and Benjamin R. Larson for State Farm Mutual Automobile Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

Coddington, Hicks & Danforth, Richard G. Grotch and R. Wardell Loveland as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—This case presents several questions regarding whether a party to an uninsured motorist arbitration pursuant to Insurance Code section 11580.2 is eligible to recover costs and prejudgment interest. Specifically, we are asked to decide (1) whether the cost-shifting provisions of Code of Civil Procedure section 998 apply to such arbitrations; (2) whether the award of such costs, together with the arbitration award, can exceed an insurer's "maximum liability" under Insurance Code section 11580.2, subdivision (p)(4), which "shall not exceed the insured's underinsured motorist coverage limits"; (3) whether prejudgment interest pursuant to Civil Code section 3291 is available for an uninsured motorist arbitration; and (4) whether, if costs are available under Code of Civil Procedure section 998, those costs include deposition and exhibit preparation costs.

We conclude that (1) the provisions of Code of Civil Procedure section 998 do apply to arbitration conducted pursuant to Insurance Code section 11580.2; (2) the "maximum liability" provision of Insurance Code section 11580.2, subdivision (p)(4) does not preclude recovery of costs under Code of Civil Procedure section 998 that, added to the arbitration award, exceed the coverage limits; (3) prejudgment interest is not available in the present action because it is not an action for "personal injury" within the meaning of Civil Code section 3291; and (4) such costs may include deposition and exhibit preparation expenses. We therefore affirm in part and reverse in part the judgment of the Court of Appeal.

## I.  STATEMENT OF FACTS

The facts of this case are not in dispute. On February 6, 1999, Isofea Pilimai was injured in an automobile accident with an uninsured driver. Pilimai filed a petition to compel arbitration with Farmers Insurance Exchange Company (Farmers), his insurance carrier, under the uninsured motorist provisions of his insurance policy. The policy limit for uninsured motorist coverage in Pilimai's policy was $250,000.

On March 21, 2003, prior to the arbitration, Pilimai served a settlement demand pursuant to Code of Civil Procedure section 998 on Farmers, offering to settle the case for $85,000, which was refused.

After conducting an arbitration, the arbitrator found Pilimai was entitled to recover damages in the amount of $556,972. The arbitrator entered an award "in that amount less the $15,000 credit that [Farmers] is entitled to, or the amount of the uninsured motorist policy limits which will have to be proven by declaration of the court upon a petition to confirm this arbitration award." The arbitration award was silent on the subject of costs and prejudgment interest.

Both Pilimai and Farmers timely filed petitions to confirm the award as a judgment in the trial court. Only Farmers, however, set its petition for a hearing. In Farmers' petition, it sought to reduce the judgment to the $250,000 policy limit, less the $15,000 credit to which it was entitled under the policy.

In Pilimai's petition and in his opposition to Farmers' petition, he sought a judgment in the same amount, plus costs and prejudgment interest. Pilimai claimed he was entitled to recover his costs of suit and prejudgment interest based on Code of Civil Procedure section 998 and Civil Code section 3291.

His memorandum of costs sought $266.80 in filing fees, $2,683.07 in deposition costs, $195.51 in exhibit costs and $14,975.85 in expert witness fees. Pilimai also requested $36,470.22 in prejudgment interest pursuant to Civil Code section 3291.

The trial court entered judgment in the amount of $235,000. The trial court concluded that Pilimai had met the requirements of eligibility for costs and prejudgment interest under Code of Civil Procedure section 998 and Civil Code section 3291, because plaintiff had recovered more than the settlement offer refused by defendant, and because the two statutes applied to arbitration. Nonetheless, the court concluded that the insurance policy limited recovery to the $235,000, and an award of costs and prejudgment interest that, together with the arbitration award, would exceed that limit was disallowed.

The Court of Appeal reversed the trial court's judgment with respect to costs and prejudgment interest. It reasoned that Code of Civil Procedure section 998, and by implication Civil Code section 3291, allowed recovery of such costs pursuant to arbitration, and that any insurance agreement purporting to limit recovery to the amount of policy coverage must be read in light of such statutory authorization. "As a general rule of construction, the parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made. These existing laws are considered part of the contract just as if they were expressly referred to and incorporated. [Citation.] [¶] As a result of this general rule that applicable statutes are considered part of the contract, we conclude the parties had section 998 and Civil Code section 3291—and their respective cost-shifting mechanisms—in mind when they entered into this contract. Consequently, those two statutory provisions must therefore constitute part of this contract unless the contract expressly excluded them." The Court of Appeal further concluded that "[n]othing in the insurance policy explicitly waives the protections of section 998 and Civil Code section 3291."

The Court of Appeal also rejected Farmers' argument that its position is supported by Insurance Code section 11580.2, subdivision (p)(4), which declares that "maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." The Court of Appeal interpreted the "maximum liability" provision to refer to "compensatory damages recoverable by Pilimai, not the costs of the proceedings or prejudgment interest that arise directly from [Farmers'] status as a litigant in

the arbitration and subsequent court proceedings." In its dispositional paragraph, the Court of Appeal directed the trial court "to enter a new judgment in favor of Pilimai and against Farmers in the principal sum of $235,000 plus: (a) award prejudgment interest pursuant to Civil Code section 3291; and (b) award Pilimai's costs (including the arbitration costs) incurred after his section 998 demand . . . ." We granted review.

## II.  DISCUSSION

A.  *Do the Cost-shifting Provisions of Code of Civil Procedure Section 998 Apply to Uninsured Motorist Arbitrations Conducted Pursuant to Insurance Code Section 11580.2?*

In addressing whether Code of Civil Procedure section 998 applies to Insurance Code section 11580.2 arbitrations, we first consider the meaning and purpose of these statutes.

Code of Civil Procedure section 998 provided, at the relevant time: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] (b) Not less than 10 days prior to commencement of trial *or arbitration (as provided in Section 1281 or 1295)* of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. . . . [¶] . . . [¶] (d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs." (Italics added.) The above reference to arbitration was added to Code of Civil Procedure section 998 in 1997. (Stats. 1997, ch. 892, § 1.)

The purpose of Code of Civil Procedure section 998 is to " 'encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)' " (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1116 [86 Cal.Rptr.2d 614, 979 P.2d 974].)

Insurance Code section 11580.2 governs the provision of uninsured and underinsured motorist arbitration. As we explained in *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332 [79 Cal.Rptr.2d 308, 965 P.2d 1178] (*Mercury Insurance*): "At its core, in Insurance Code section 11580.2, the law states that, generally, an automobile liability insurance policy that an insurer issues or delivers to an insured owner or operator covering damages that a third party shall be legally entitled to recover for bodily injury from the insured owner or operator shall also cover damages that the insured owner or operator shall be legally entitled to recover for bodily injury from an *un*insured owner or operator. (*Id.*, subd. (a)(1).) In this aspect, its purpose is to require a 'type of self-protection' on the part of insured owners or operators. [Citations.]

"In addition, in Insurance Code section 11580.2, the law states that such an automobile liability insurance policy shall also 'provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration'—meaning *contractual* arbitration. (*Id.*, subd. (f).) In *this* aspect, its purpose is to offer a means of resolving disputes that is more expeditious and less expensive than litigation. [Citations.] Its beneficiaries include the insurer and the insured, who are each thereby given a right against litigating these issues. [Citation.] But they also include the courts themselves, which are thereby freed from entertaining such litigation." (*Mercury Insurance, supra*, 19 Cal.4th at pp. 341–342.)

Farmers argues that an uninsured motorist arbitration pursuant to Insurance Code section 11580.2 is not an arbitration within the meaning of Code of Civil Procedure section 998, subdivision (b). In particular, it relies on the language of Code of Civil Procedure section 998, subdivision (b) that arbitration subject to that statute's provisions be "as provided in section 1281."[1] Code of Civil Procedure section 1281, which defines the scope of the California Arbitration Act (CAA), provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Farmers focuses on the word "agreement" and postulates that the Legislature, in referring to arbitration "as provided in section 1281" must have intended to refer only to arbitrations subject to written agreements. An uninsured motorist arbitration pursuant to Insurance Code section 11580.2, Farmers argues, is mandated by statute rather than the result

---

[1] Code of Civil Procedure section 998 also refers to arbitration as provided in Code of Civil Procedure section 1295. That section concerns medical malpractice arbitration and is not pertinent to the present case.

of a voluntary agreement, and therefore does not fall within the scope of arbitration subject to the cost-shifting provisions of Code of Civil Procedure section 1281.

This argument is without merit. In *Mercury Insurance, supra*, 19 Cal.4th 332, we considered the applicability of Code of Civil Procedure section 1281.2—which, like 1281, is part of the CAA—to an uninsured motorist arbitration pursuant to Insurance Code section 11580.2. At issue in that case was the question whether a trial court has the "authority to 'consolidate' a contractual arbitration proceeding between an insurer and an insured as to uninsured motorist coverage in the insured's pending action against third parties—strictly speaking, does it have authority to join the insurer as a defendant as to uninsured motorist coverage issues—for all purposes, including trial, in order to avoid conflicting rulings on a common issue of law or fact?" (*Mercury Insurance, supra*, 19 Cal.4th at p. 337.)

In answer to that question, we first affirmed that arbitration pursuant to Insurance Code section 11580.2 is a form of contractual arbitration governed by the CAA. "This law is implicated because the uninsured motorist coverage law requires an automobile liability insurance policy, which is a contract [citation], to provide for arbitration." (*Mercury Insurance, supra*, 19 Cal.4th at p. 342, italics omitted.)

We next considered the scope of Code of Civil Procedure section 1281.2, subdivision (c), which authorizes a trial court to "order intervention or joinder of all parties in a single action or special proceeding . . . as to all or only certain issues." We concluded that this joinder was authorized "for all purposes, including trial." (*Mercury Insurance, supra*, 19 Cal.4th at pp. 345–346, italics omitted.) Applying Code of Civil Procedure section 1281.2, subdivision (c) to the case at hand, we concluded that because a contractual arbitration proceeding could be consolidated with a pending civil case involving a third party, so too could an uninsured motorist arbitration. As we stated: "In a word, under the contractual arbitration law as it appears in Code of Civil Procedure section 1281.2, the general right to contractual arbitration of uninsured motorist coverage . . . may have to yield if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of conflicting rulings thereon." (*Mercury Insurance, supra*, 19 Cal.4th at pp. 347–348.)

■ As is therefore clear from *Mercury Insurance*, an uninsured motorist arbitration, although mandated by statute, nonetheless is a contractual arbitration subject to the provisions of the CAA, including Code of Civil Procedure section 1281. Nor is there anything in the language of Code of Civil Procedure section 1281 that suggests a contractual arbitration provision in an insurance

policy that is statutorily mandated is outside the scope of the CAA. Indeed, Farmers argues elsewhere in its brief that the cost-sharing provisions of the CAA, found in Code of Civil Procedure section 1284.2, should apply to the present arbitration.

Moreover, nothing in Insurance Code section 11580.2 suggests that the arbitration mandated therein is not subject to the CAA. That statute, unlike, for example, the mandatory fee arbitration law for attorney/client fee disputes, does not constitute "a separate and distinct arbitration scheme," with a set of procedures different from the CAA. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983 [12 Cal.Rptr.3d 287, 88 P.3d 24].) We therefore presume the Legislature intended to include such arbitrations within the ambit of the CAA.

We therefore conclude that an uninsured motorist arbitration pursuant to Insurance Code section 11580.2 is an "arbitration" within the meaning of Code of Civil Procedure section 998 and subject to the latter statute's cost-shifting provisions.[2]

B. *Does the Maximum Liability Provision of Insurance Code Section 11580, Subdivision (p)(4) Limit a Cost Award Pursuant to Code of Civil Procedure Section 998?*

Insurance Code section 11580.2, subdivision (p)(4) (hereinafter Insurance Code section 11580.2(p)(4)) provides that "[w]hen bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." Farmers argues that this "maximum liability" provision precludes court-awarded costs to an insured when, as in the present case, the costs plus the damages awarded the insured would exceed the coverage limit. We agree with the Court of Appeal that this argument should be rejected.

---

[2] Farmers also argues that costs under Code of Civil Procedure section 998 are barred by Insurance Code section 11580.26, subdivision (b), which states in pertinent part: "No cause of action shall exist against either an insured or insurer from exercising the right to request arbitration of a claim under . . . Section 11580.2." A cause of action, stemming from a violation of a plaintiff's primary right, is the basis for a lawsuit. (See *Mycogen Corp. v. Monsanto Corp.* (2002) 28 Cal.4th, 888, 904 [123 Cal.Rptr.2d 432, 51 P.3d 297].) A request for costs pursuant to Code of Civil Procedure section 998 is not an independent basis for a lawsuit but is ancillary to a suit. Farmers cites no authority, and we have found none, for the proposition that a request for costs can be considered a "cause of action."

In *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985 [73 Cal.Rptr.2d 682, 953 P.2d 858] (*Murillo*), we considered whether the cost-shifting provisions of Civil Procedure section 998 could be impliedly overridden by a contrary statute. We recognized that Code of Civil Procedure section 1032, which authorizes costs to prevailing parties, provides in subdivision (b), that " '[e]xcept as otherwise *expressly provided* by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.' " (*Murillo, supra,* 17 Cal.4th at p. 989, italics added.) Turning to Code of Civil Procedure section 998, we stated: "Section 998 explicitly states that it 'augment[s]' section 1032(b). Thus, the requirements for recovery of costs and fees under section 998 must be read in conjunction with section 1032(b), including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise *expressly* provided by statute.' (§ 1032(b), italics added.)" (*Murillo, supra,* 17 Cal.4th at p. 1000.)

We then determined that the statute in question, Civil Code section 1794, subdivision (d) (hereafter Civil Code section 1794(d)), did not expressly provide an exception to Code of Civil Procedure sections 998 and 1032. Civil Code section 1794(d), part of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), states: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." The act has no comparable provision for prevailing sellers. We concluded: "Although Civil Code section 1794(d) gives a prevailing buyer the right to recover 'costs and expenses, including attorney's fees,' the statute makes no mention of prevailing sellers. In other words, it does not *expressly* disallow recovery of costs by prevailing sellers; any suggestion that prevailing sellers are prohibited from recovering their costs is at most *implied*. Accordingly, based on the plain meaning of the words of the statutes in question, we conclude Civil Code section 1794(d) does not provide an 'express' exception to the general rule permitting a seller, as a prevailing party, to recover its costs under section 1032(b)." (*Murillo, supra,* 17 Cal.4th at p. 991.) We came to the same conclusion with respect to Code of Civil Procedure section 998. (*Murillo, supra,* 17 Cal.4th at p. 1000.)

We also rejected the plaintiff's argument that the legal dictionary definition of "expressly" supported his position. The word "expressly" has been defined as " '[i]n an express manner; in direct or unmistakable terms; explicitly; definitely; directly. . . . The opposite of impliedly.' (Black's Law Dict. (5th ed. 1979) p. 522, col. 1.) This definition is actually contrary to buyer's position, for Civil Code section 1794(d)'s silence with regard to prevailing sellers does not 'explicitly' or 'directly' disable sellers from recovering their costs pursuant to section 1032." (*Murillo, supra,* 17 Cal.4th at p. 991.)

The *Murillo* court also rejected the argument that its interpretation of Civil Code section 1794(d) defeated the purpose of the statute: "We could not, of course, ignore the actual words of the statute in an attempt to vindicate our perception of the Legislature's purpose in enacting the law. ' "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." ' " (*Murillo, supra,* 17 Cal.4th at p. 993.) The court also held that the provision for attorney fees to prevailing buyers but not sellers sufficiently preserved the statute's proconsumer objectives. (*Ibid.*)

In *Murillo*, the court found no express override of Code of Civil Procedure section 998 when there was a reference to plaintiff's costs but not defendant's. Insurance Code section 11580.2, at issue in the present case, makes no mention of costs whatever. Its main focus is on defining rules for uninsured or underinsured motorist insurance policies involving "bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . ." (Ins. Code, § 11580.2, subd. (a)(1).) Insurance Code section 11580.2(p)(4)'s "maximum liability" provision clearly means to limit liability of the insurer arising out of the ownership, maintenance, or use of any motor vehicle. But it is not at all clear that the statute intends to exempt the insurer from the general cost rules found in Code of Civil Procedure section 998, i.e., from the obligation to pay costs arising out of its behavior as a litigant. In other terms, Insurance Code section 11580.2(p)(4)'s reference to "maximum liability" "does not 'explicitly' or 'directly' disable" an insured from recovering costs above such liability when the conditions of Code of Civil Procedure section 998 are met. (*Murillo, supra,* 17 Cal.4th at p. 991.)

This conclusion finds additional support in another case relied on by Pilimai, and by the Court of Appeal below, *Harris v. Northwestern National Ins. Co.* (1992) 6 Cal.App.4th 1061, 1065 [8 Cal.Rptr.2d 234] (*Harris*). In that case, involving the breach of a bond, the defendant argued that it could not be assessed costs pursuant to Code of Civil Procedure section 1032, based on the Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.). It argued that a provision of that law, Code of Civil Procedure section 996.470, subdivision (a) which provides, "Notwithstanding any other statute . . . , the aggregate liability of a surety to all persons for all breaches of the condition of a bond is limited to the amount of the bond," precluded cost awards that, combined with damages, exceed the amount of the bond. The *Harris* court, rejecting this argument, stated: "This language, however, refers only to liability for 'breaches of the condition of the bond.' It does not limit liabilities of a surety which are imposed by statute rather than for breach of the condition of the bond. [Citation.] [¶] This was made clear by the subsequent enactment of Code of Civil Procedure section 996.475, which provides '[n]othing in this chapter is intended to limit the liability of a surety pursuant

to any other statute.' " (*Harris, supra*, 6 Cal.App.4th at p. 1065.) As the *Harris* court concluded: "The obligation of appellant to pay costs is imposed by Code of Civil Procedure section 1032 based upon appellant's status as a party litigant, not for breach of the condition of the bond. Here, although appellant admitted its execution of the bond, it denied liability and litigated whether its principal, the notary, breached the condition of the bond. As a losing party litigant, appellant is properly subjected to costs in addition to the amount of the bond." (*Harris, supra*, 6 Cal.App.4th at pp. 1065–1066.)

Farmers correctly notes that *Harris* is distinguishable from the present case inasmuch as it concerned a statute that explicitly provided that the limitation on liability applied only to " 'breaches of the . . . bond' " and was not intended to limit liability pursuant to " 'any other statute.' " (*Harris, supra*, 6 Cal.App.4th at p. 1065.) But *Harris* does call attention to the distinction between "[t]he obligation of appellant to pay costs . . . imposed by Code of Civil Procedure section 1032 based upon appellant's status as a party litigant" and breach of the obligation set forth in the statute in question. (*Ibid.*) As observed above, it is not clear that Insurance Code section 11580.2(p)(4)'s maximum liability provision applies to costs imposed on an insurance company through its behavior as a litigant, specifically its failure to settle, rather than damages assessed against it as a liability insurer.

Nor are we persuaded otherwise by the fact that the arbitration provisions of Insurance Code section 11580.2 are intended to provide " 'inexpensive resolution' " of disputes. (*Orpustan v. State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 992 [103 Cal.Rptr. 919, 500 P.2d 1119].) Such inferences, based on general legislative purpose, do not constitute express exceptions to Code of Civil Procedure sections 1032 and 998. (*Murillo, supra*, 17 Cal.4th at p. 994.)

■ We therefore conclude that the "maximum liability" provision of Insurance Code section 11580.2(p)(4) does not preclude an award of costs pursuant to Code of Civil Procedure section 998, even if the costs, in addition to the damage award, would exceed the insurance policy's maximum coverage.

### C. *Is Prejudgment Interest Pursuant to Code of Civil Procedure Section 3291 Available in the Present Case?*

Farmers argues that even if Pilimai may receive costs pursuant to Code of Civil Procedure section 998, he may not receive prejudgment interest under a related statute, Civil Code section 3291. That statute provides in pertinent part: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful

intent of the other person, corporation, association, or partnership, and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment." (*Ibid.*)

Farmers argues, among other things, that the present case is not an "action brought to recover damages for *personal injury* sustained by any person resulting from or occasioned by the tort of any other person . . . ." Although the plain language of the statute is consistent with Farmers' position, Pilimai argues in effect that the language of the statute is consistent with his own interpretation: he is bringing an action against Farmers for the purpose of recovering damages for personal injury resulting from the tort of another, i.e., an uninsured motorist. In other words, under Pilimai's reading, an "action brought to recover damages for personal injury" does not itself have to be a personal injury action—it may be a contractual action against one's own insurance company to recover compensation for a personal injury.

Pilimai's argument fails for several reasons. First, it is not supported by the literal language of the statute. An action against an insurance company to recover policy benefits is not an action to recover "damages for personal injury" but rather damages for breach of contract, even if that contract is to provide compensation for personal injury. Moreover, the legislative history does not support his position. Civil Code section 3291 was characterized throughout the various analyses and digests leading up to its passage as pertaining to "personal injury actions." (Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 203 (1981–1982 Reg. Sess.) Sept. 15, 1981; Sen. Democratic Caucus, Analysis of Sen. Bill No. 203 (1981–1982 Reg. Sess.) as amended Sept. 4, 1981, p. 2; Assem. Com. on Judiciary, Republican Analysis of Sen. Bill No. 203 (1981–1982 Reg. Sess.) as amended Aug. 19, 1981.) These references undermine Pilimai's position that the action itself does not have to be a personal injury action to fall within the scope of Civil Code section 3291.

Pilimai's interpretation is also directly at odds with *Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121 [3 Cal.Rptr.2d 666, 822 P.2d 374] (*Gourley*). In that case, the plaintiff sued for breach of the covenant of good faith and fair dealing on the ground that the insurer refused in bad faith to fully compensate her for personal injuries suffered in an automobile accident

with an uninsured motorist. We began by observing that "[c]ourts generally agree that the purpose of section 3291 is to provide a statutory incentive to settle personal injury litigation where plaintiff has been physically as well as economically impaired, and thus it has been considered inapplicable to contractual disputes, business-tort losses and arbitration proceedings." (*Id.* at p. 126.)

We held in *Gourley* that a suit for an insurer's tortious breach of the implied covenant of good faith and fair dealing was not a personal injury action that would permit recovery of interest pursuant to Civil Code section 3291, but rather is an action primarily "to recover economic loss caused by the tortious interference with a property right." (*Gourley, supra,* 53 Cal.3d at p. 123, italics omitted.) A first party suit for breach of the covenant against the insurer "exists to assure the insurer makes prompt payment of claims to the insured. The substance of a bad faith action in these first party matters is the insurer's unreasonable refusal to pay benefits under the policy." (*Id.* at p. 127.) An " 'action against an insurer for bad faith is conceptually similar to an action for interference with contractual relations, for in both actions the primary interest of the plaintiff which is invaded by the defendant's wrongful conduct is the plaintiff's right to receive performance under an existing contract.' " (*Id.* at p. 129.)

Pilimai argues that this case is distinguishable inasmuch as it involves a direct suit for recovery of insurance proceeds for compensation of personal injury, whereas *Gourley* concerned a suit against an insurer for breach of the covenant of good faith and fair dealing. This distinction, however, does not work in Pilimai's favor. Implicit in our observation in *Gourley* that a bad faith suit is brought primarily "to recover economic loss caused by the tortious interference with a property right" (*Gourley, supra,* 53 Cal.3d at p. 123, italics omitted), is the notion that the right to recover damages from an insurer based on an insurance policy is a contractual right or property right, and not a personal injury action, even when the insurance is for compensation for personal injury. Although in the present case, as in *Gourley,* the insurance policy was compensating plaintiff for personal injuries, the money the insurer owed the insured was not the result of personal injury inflicted by the insurer but of a contractual obligation that the insurer assumed.

Thus, we conclude that an "action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person" within the meaning of Civil Code section 3291 must be a personal injury action sounding in tort, and does not include an action for breach of an insurance contract. Therefore, Pilimai may not recover prejudgment interest pursuant to that statute.

### D. Does an Award of Costs Pursuant to Code of Civil Procedure Section 998 Include Deposition and Exhibit Preparation Costs?

Farmers argues that even if uninsured motorist arbitration is subject to the cost-shifting provisions of Code of Civil Procedure section 998, the only costs of arbitration that may be recovered are expert witness fees, which are specifically mentioned in subdivision (d) of that statute. The other costs Pilimai requested in the memorandum of costs he submitted to the trial court (see Cal. Rules of Court, rule 870(a)) are, as noted above, $2,683.07 in deposition costs and $195.51 in exhibit costs.[3]

■ As noted above, Code of Civil Procedure section 998, subdivision (a), provides in pertinent part that "[t]he costs allowed under Section[] . . . 1032 shall be withheld or augmented as provided in this section." Therefore, the starting point in determining which costs are available under Code of Civil Procedure section 998 is to identify those costs allowed under Code of Civil Procedure section 1032. Code of Civil Procedure section 1033.5 enumerates such costs. These include "[t]aking, videotaping, and transcribing necessary depositions including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed, and travel expenses to attend depositions." (Code Civ. Proc., § 1033.5, subd. (a)(3).) Also included are "[m]odels and blowups of exhibits and photocopies of exhibits . . . if they were reasonably helpful to aid the trier of fact." (Id., subd. (a)(12).) These are precisely the types of costs Pilimai is claiming.

Farmers argues that these costs are not allowable, citing Code of Civil Procedure section 1284.2, which provides: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." As Farmers notes, the court in Austin v. Allstate Ins. Co. (1993) 16 Cal.App.4th 1812 [21 Cal.Rptr.2d 56] (Austin) relied on this section to conclude that, as a general matter, costs are not available to prevailing parties in arbitration absent

---

[3] Pilimai initially argued in his answer brief in this court that he was entitled not only to the above expenses but also to "arbitrator's fees and expenses." The Court of Appeal in its disposition authorized the award of unspecified arbitration costs, and stated in its opinion that the cost-shifting provisions of Code of Civil Procedure section 998 would apply to arbitrators' fees. However, Pilimai clarified in supplemental briefing that he sought only those expenses requested in his memorandum of costs, which did not include a request for arbitrators' fees and expenses. We express no opinion as to whether such fees and expenses may be awarded pursuant to Code of Civil Procedure section 998.

agreement and, in particular, are not available in an arbitration pursuant to Insurance Code section 11580.2.

The *Austin* court also relied on Code of Civil Procedure section 1293.2, part of the CAA, which provides: "The court shall award costs upon any *judicial proceeding* under this title as provided in Chapter 6 [recovery of costs in civil actions] . . . ." (Italics added.) Focusing on the words "judicial proceeding," the court stated: "There is no similar provision for awarding costs incurred in arbitration. It is apparent that the Legislature has distinguished between costs incurred in an arbitration proceeding and costs incurred in superior court to enforce an arbitration award, allowing costs to the prevailing party only in the latter." (*Austin, supra*, 16 Cal.App.4th at pp. 1815–1816.)

*Austin* is distinguishable from the present case inasmuch as it concerned an award of costs pursuant to Code of Civil Procedure section 1032. Here, we address costs awarded pursuant to Code of Civil Procedure section 998, which now authorizes the award of costs after an arbitration. More specifically, Code of Civil Procedure section 998, subdivision (d), stated at the time this case was adjudicated: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or *arbitrator*, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial *or arbitration*, or during trial *or arbitration*, of the case by the plaintiff, *in addition to plaintiff's costs*." (Italics added.)[4]

From the above language, it is apparent that once the conditions of Code of Civil Procedure section 998 are met, a defendant may be required to pay expert witness fees incurred during arbitration. There is nothing to suggest that the final phrase—"in addition to plaintiff's costs"—applies only to cases that go to trial but not to arbitration. Indeed, it is evident that the above statute uses the term "plaintiff" to include those pursuing a legal claim either through a civil action or through arbitration. We therefore interpret that last phrase to mean that an arbitration plaintiff is equally able to obtain costs incurred during arbitration as is a trial plaintiff. Reading this section with Code of Civil Procedure section 998, subdivision (a), it is apparent that the types of costs available to an arbitration plaintiff are those costs available under Code of Civil Procedure section 1032, as enumerated in Code of Civil Procedure

---

[4] We note that a 2005 amendment to Code of Civil Procedure section 998, subdivision (d) inserted the word "postoffer" between "cover" and "costs." (Stats. 2005, ch. 706, § 13.) The Legislature has made clear that the amendment is to apply prospectively only. (*Id.*, § 41.)

section 1033.5. As discussed above, the costs Pilimai is seeking for depositions and exhibit preparation are within the scope of the latter statute.

Moreover, all that Code of Civil Procedure section 1284.2 says about the kinds of costs at issue here—"expenses incurred by a party for his own benefit"—is that such costs are not to be included in the costs that the parties are to share. Thus, Code of Civil Procedure section 1284.2 does not conflict with Code of Civil Procedure section 998, subdivision (d)'s authorization of arbitration plaintiffs under appropriate conditions to obtain costs incurred for their own benefit. And while it is true, as the *Austin* court observed, that no provision of the CAA authorizes the award of arbitration costs absent agreement, Code of Civil Procedure section 998 itself provides the statutory authorization for such costs.

Farmers argues that Code of Civil Procedure section 998, subdivision (d), properly read, applies only to expert witness fees and not other arbitration costs. Their argument is as follows: In general, the above statute does not of itself entitle plaintiffs to costs because a plaintiff who makes an offer that a defendant refuses and then obtains a judgment more favorable than the offer is, by definition, a "prevailing party" entitled to costs not under Code of Civil Procedure section 998 but under Code of Civil Procedure section 1032. The only exception to the above is expert witness fees, which are specifically provided in Code of Civil Procedure section 998, subdivision (d), but not provided in Code of Civil Procedure section 1032 if not ordered by a court or expressly authorized by statute. (Code Civ. Proc., § 1033.5, subd. (b)(1).) Thus, the phrase "in addition to plaintiff's costs" at the end of Code of Civil Procedure section 998, subdivision (d), Farmers argues, is superfluous. The legislative history reveals that Senator Kopp proposed as part of the 1997 amendments to the statute to eliminate that phrase for this reason. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended May 1, 1997, p. 7.) Subsequently, the language was reinstated, and the Senate Judiciary Committee analysis commented that "[a]lthough section 1033.5 provides for award of costs to the plaintiff as the prevailing party, Consumer Attorneys of California and others suggest that we restore [the words 'in addition to plaintiff's costs'] in order to eliminate any confusion." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) May 1, 1997.)

Nothing in the above argument, however, persuades us that we may ignore the plain language of Code of Civil Procedure section 998, subdivision (d). That language, as explained above, puts the arbitration plaintiff on the same footing as the plaintiff to a civil action vis-à-vis costs when the plaintiff has

made an offer that the defendant has refused and obtains a judgment more favorable than the offer. Furthermore, nothing in the above legislative history indicates that the Legislature specifically intended costs to be unavailable to arbitration plaintiffs.

Moreover, Farmers' interpretation would put arbitration defendants in a better position vis-à-vis recovery of costs than arbitration plaintiffs. Code of Civil Procedure section 998, subdivision (c)(1) provides in pertinent part: "If an offer made *by a defendant* is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs *and shall pay the defendant's costs from the time of the offer.* In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (Italics added.) The above, read in context with the rest of the statute, makes clear that an arbitration defendant who is not a prevailing party may recover costs, in addition to expert witness fees, if a plaintiff's judgment is less favorable than the defendant's offer. There is no indication that the Legislature intended to favor arbitration defendants over arbitration plaintiffs by allowing the former but not the latter to recover the full range of costs available to plaintiffs and defendants in a civil action. Indeed, the legislative history of the 1997 amendments reveals that the Legislature amended Code of Civil Procedure section 998, subdivision (c) so as to "remove an inequality in the current law which treats defendants more favorably than plaintiffs." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) July 16, 1997, p. 6.)

We therefore conclude that arbitration plaintiffs such as Pilimai are eligible for deposition and exhibit preparation costs pursuant to Code of Civil Procedure section 998, subdivision (d).

### III. DISPOSITION

The judgment of the Court of Appeal is affirmed insofar as it recognizes that Code of Civil Procedure section 998 costs are available to parties conducting arbitration pursuant to Insurance Code section 11580.2, even when those costs added to the arbitration award exceed the policy limit, and that such costs may include expert witness fees and costs related to depositions and exhibit preparation. The judgment is reversed inasmuch as it

permits an award of prejudgment interest pursuant to Civil Code section 3291. We remand the case with directions to remand to the trial court to determine the proper cost award consistent with the views expressed in this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.