Filed 5/31/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALAN HEIMLICH, | H042641 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 112CV 231939) |
| v. | |
| SHIRAZ M. SHIVJI, | |
| Defendant and Appellant. | |

## I. INTRODUCTION

The issue presented by this appeal is the recoverability of costs available under Code of Civil Procedure section 998 following an American Arbitration Association ("AAA") award that denied requests by both sides for damages, costs, and attorney fees.[1]

Attorney Alan Heimlich (Attorney) filed this action seeking payment of unpaid fees from his client Shiraz M. Shivji (Client). Client filed an answer and, one year later, asked for arbitration pursuant to his retainer agreement with Attorney. The trial court compelled contractual arbitration that resulted in no recovery by either side. Six days after the arbitration award, Client asked the arbitrator to award him costs under section 998 because Attorney's recovery was less favorable than a section 998 offer that Client made two months before

---

[1] Unspecified section references are to the Code of Civil Procedure.

1

demanding arbitration. When the arbitrator responded that he no longer had jurisdiction to take further action, Client asked the trial court to confirm the arbitration award and to award him section 998 costs as well. The court confirmed the arbitration award but, relying on *Maaso v. Signer* (2012) 203 Cal.App.4th 362 (*Maaso*), determined that Client failed to make a timely section 998 claim to the arbitrator and denied Client's request for section 998 costs. Client has appealed from this order after judgment.

We reject Attorney's suggestion that Client should have presented his section 998 request for costs to an arbitrator before the arbitration award was rendered, because an offer which is not accepted "cannot be given in evidence upon the trial or arbitration." (§ 998, subd. (b)(2).) Further, we find that in the course of his request to confirm the arbitration award Client established that the arbitrator had refused to hear any evidence of Attorney's rejection of Client's section 998 offer. Thus, we conclude that Client timely presented his section 998 claim to the arbitrator, the arbitrator should have reached the merits of that claim, and the arbitrator's refusal to hear evidence of the section 998 offer warranted partially vacating the arbitration award.

Therefore, we will reverse the order confirming the arbitration award and direct that an order be entered partially vacating the arbitration award to allow a determination of the section 998 request by the arbitrator or, if that avenue is not availing, by the court.

## II. EVIDENCE ON MOTION

### A. THE ARBITRATION AGREEMENT

In August 2003, Client retained Attorney to protect Client's intellectual property. The retainer agreement included the following arbitration provision.

"8. Arbitration. The client and our firm agree that all disputes or claims of any nature whatsoever, including but not limited to those relating to our fees or the adequacy or appropriateness of our services, shall be resolved by private and final binding arbitration before either JAMS or the American Arbitration Association in

2

San Francisco, California in accordance with their rules -- the client may choose one of these two providers.  The arbitrator must decide all disputes in accordance with California law and shall have power to decide all matters, including arbitrability.  . . ."  (Capitalization omitted.)

## B.  COMMENCEMENT OF THIS LAWSUIT

For a number of years after being retained, Attorney assisted Client with filing patent applications and forming a corporation, Giotti, Inc., to hold the patents.  A dispute arose over Attorney's fees.  Notwithstanding the above arbitration provision, Attorney filed a form complaint in the Santa Clara County Superior Court on September 10, 2012 seeking recovery for unpaid invoices.[2]  The complaint alleged a breach of contract and a common count for services rendered and an open book account.  Attorney prayed for damages of $125,244.59, interest on the damages, and costs of suit, but not attorney fees.  Client filed a form answer to the complaint that alleged 21 affirmative defenses.  Client prayed for costs of suit and reasonable attorney fees, despite the fact that the retainer agreement did not provide for the prevailing party in any dispute to recover attorney fees or costs.[3]

On September 18, 2013, Client sent Attorney an offer to compromise the action by allowing a judgment providing that Client pay "the amount of thirty

---

[2]  Attorney's brief asserts that, before filing suit, he sent Client a "Mandatory Fee Arbitration letter" and Client "did not avail himself of this procedure."  This assertion lacks support in the appellate appendices provided by the parties.  Attorney is presumably referring to the Mandatory Fee Arbitration Act set out at Business and Professions Code section 6200 et seq., under which "whereas a client cannot be forced . . . to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney can be forced to do so."  (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 984.)

[3]  No cross-complaint appears in the appendices that constitute the record on appeal.

thousand and one ($30,001.00) dollars, including all taxable costs of suit to date of acceptance," with each party to bear its own attorney fees and costs.

On November 1, 2013, the trial court denied Client's motion for summary judgment. On November 14, 2013, the court denied Attorney's motion for judgment on the pleadings, except as to affirmative defenses 7 through 12, 14, 17, 18, 20, and 21. The trial court also vacated a December 2013 trial date. On January 31, 2014, Attorney filed a first amended complaint that added two causes of action for fraud and another for declaratory relief.

## C. THE ARBITRATION PROCEEDINGS

One year after Client filed his answer, on November 18, 2013, he demanded arbitration of the dispute on an AAA form entitled "Commercial Arbitration Rules."[4] Attorney objected to Client's demand.

On April 4, 2014, in response to Attorney's objection, an AAA arbitrator decided that it was up to the trial court to determine whether Client had waived arbitration by participating in this action. On May 29, 2014, the trial court granted Client's motion to compel arbitration and stay this action pending arbitration.

In the arbitration proceedings, Client filed a 21-page statement of claims. Client alleged that Attorney had achieved approval of only one of Client's 108 patent claims. Client paid Attorney $16,867.78 between September 3, 2003 and August 27, 2004. In September 2005, Client incorporated Giotti and, between November 26, 2005 and May 22, 2009, Giotti paid Attorney $159,697.44 for his services. Client accused Attorney of unauthorized flat fee billing, double billing, unilateral fee increases, delayed billing, and inflated billing. Client alleged breaches of contract, fiduciary duty, and the duty of good faith and fair dealing,

---

**4** In requested supplemental briefs, the parties have essentially stipulated that their arbitration was conducted under the AAA's Commercial Arbitration Rules effective on October 1, 2013 and that this court can take judicial notice of those Rules.

4

and also alleged unlawful business practices. Client requested restitution for unjust enrichment, a refund of amounts paid, punitive damages, and "all costs of suit incurred herein." There is no indication that Client specifically claimed entitlement to costs under section 998 either in his statement of claims or any other pleading preceding the arbitrator's decision.

Attorney filed an 18-page "Counterclaim" in arbitration that restated the five causes of action in his amended civil complaint and added claims for indemnification and comparative fault. Attorney sought to recover for unpaid invoices, attorney fees, "Costs of this Arbitration and the Lawsuit in Santa Clara County . . . per Civil Code Section 3300, and [Attorney's] costs of the lawsuit and this arbitration per California Code of Civil Procedure Section 1032."

After hearing six days of evidence, the AAA arbitrator issued an eight-page decision on March 5, 2015. The award was titled as from a "Commercial Arbitration Tribunal." The arbitrator determined that Attorney helped Client form a corporation, Giotti, Inc., to which Client transferred his interest in four patents. After late November 2005, an attorney-client relationship was created between Attorney and Giotti. Attorney was awarded nothing on his counterclaims against Client because "[t]he legal services provided by [Attorney] from late November, 2005 through May, 2007 were performed for the benefit of Giotti, Inc. and the obligation to pay for those services rested with Giotti, Inc.," which Attorney had not named as a party in his complaint or his counterclaim.

The arbitrator awarded Client $0 on his claims against Attorney. As to arbitration expenses, "[t]he administrative fees and expenses of the [AAA] totaling $9,575.00 shall be borne as incurred and the arbitration compensation totaling $22,800.00 shall be borne as incurred. Each side will bear their own attorneys' fees and costs." (Capitalization omitted.) As to prearbitration expenses, the arbitrator ruled that, while Attorney had breached the arbitration agreement by filing this lawsuit, Client could have remedied the breach by raising the issue immediately. "Accordingly, both parties are at fault for any expenses incurred in

5

that litigation."  The award also stated, "This Award is intended to be a complete disposition of all claims and counterclaims submitted to this Arbitration.  All claims not expressly granted herein are hereby[] denied."

Six days after the award, on March 11, 2015, Client sent an e-mail to the arbitrator stating in part, "There is one open matter that has to do with the award of costs pursuant to CCP § 998 and the procedure to follow regarding the same." "Our understanding is that the demand for an award for recovery of these costs should be submitted to the Arbitrator rather than directly to the Court.  Your confirmation of this procedure will be appreciated."

The arbitrator responded by e-mail the following day.  "Counsel, once I issued [m]y Final Award I no longer have jurisdiction to take any further action in this matter.  As discussed in the Award, whatever may have been the costs, fees, etc. associated with the Santa Clara litigation were to be borne by the parties . . . ."

## D.  MOTION SEEKING COSTS AND CONFIRMATION OF AWARD

On April 24, 2015, Client filed a motion asking the court to resume jurisdiction in the case, confirm the arbitration award, and "Grant Interest and Costs Pursuant to CCP §998."  Client's motion explained that the arbitrator had rejected his request to award costs under section 998 due to a lack of jurisdiction. Client submitted a memorandum of costs totaling $76,684.02, which included witness fees of $26,668.01, AAA fees of $23,550.00, and deposition costs of $11,485.82.[5]  Attorney opposed this request and moved to strike or tax costs. Client filed a reply.

By order dated May 27, 2015, the court confirmed the arbitration award, "notwithstanding consideration of any motions pursuant to California Code of Civil Procedure § 998."

---

[5]  It appears that Client's request for costs was limited to costs through the arbitration proceedings, not including the subsequent court proceedings.

6

At a hearing on costs on June 16, 2015, the court's tentative ruling was: "I came to the conclusion that the leading case cited by plaintiff was on point and the one that the Court should follow, [is the] <u>Maaso vs Signer</u> case, 203 Cal.App.4th, 362. Basically, when the matter went to the arbitrator, it was [i]ncumbent upon the defendant to raise the CCP 998 issue with the arbitrator on a timely basis. In the view of the arbitrator, it got raised late after the award." The court took the matter under submission and later the same day denied the remainder of Client's motion, granted Attorney's motion to tax costs, and ordered each party to bear their own costs and attorney fees as ordered by the arbitrator.

### III. AWARDING COSTS UNDER SECTION 998 AFTER ARBITRATION

### A. APPLICABLE STATUTORY SCHEMES

Three statutory schemes, all in the Code of Civil Procedure, are relevant to our analysis of the recoverability of costs in judicial proceedings to confirm, correct, or vacate arbitration awards. One is the general scheme authorizing recovery of costs of litigation beginning with section 1021. Another is California's Arbitration Act ("CAA") which begins at section 1280. The third is section 998.

Chapter 6 of Title 14 of Part 2 of the Code of Civil Procedure governs the recovery of costs of litigation. Section 1032, subdivision (b) sets forth the general rule that the party prevailing "in any action or proceeding" "is entitled as a matter of right to recover costs . . . ." Section 1032, subdivision (a) identifies which party has prevailed in four sets of circumstances and otherwise leaves the determination of the prevailing party to the trial court's discretion. (*deSaulles v. Community Hosp. of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147.) Section 1033.5 was enacted in 1986 to codify in one place existing law concerning which costs are allowable. (*Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436, 441, disapproved on another ground by *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 107.) It is worth noting that section 1033.5, subdivision (a)(10) currently includes as allowable costs "Attorney's fees, when authorized by . . . :

7

[¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law," as many published cases about arbitration costs involve attorney fees.[6]

Section 998 is understood to be an exception to section 1032. Subdivision (a) of section 998 states, "The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section." *Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103 (*Scott Co.*) explained: "Section 998 modifies the general rule of section 1032 that only the prevailing party recovers its costs." (*Scott Co.*, at p. 1112.) "It is the very essence of section 998 that, to encourage both the making and the acceptance of reasonable settlement offers, a losing defendant whose settlement offer exceeds the judgment is treated for purposes of postoffer costs *as if* it were the prevailing party." (*Scott Co.*, at p. 1114.) The purpose of section 998 " 'is to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant — who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)' " (*Scott Co.*, at p. 1116; *Pilimai v. Famers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 139 (*Pilimai*).)

In 1997, section 998 was amended to authorize arbitrators as well as courts to impose costs on parties whose arbitration awards were no more favorable than

---

[6] Fees authorized by contract were added to the statute in 1990. (Stats. 1990, ch. 804, § 1, p. 3551.) The same 1990 amendment also resolved confusion about how to recover such fees by specifying in section 1033.5, subdivision (b)(5) that contractual attorney fees "shall be fixed either upon a noticed motion or upon entry of a default judgment, unless otherwise provided by stipulation of the parties." (Stats. 1990, ch. 804, § 1, p. 3552.)

settlement offers they had rejected.[7] These amendments superseded the holding in *Woodard v. Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656 (*Woodard*) "that section 998 and Civil Code section 3291 do not apply to [contractual] arbitration." (*Id.* at p. 666.)

Section 1293.2, part of the CAA, specifically makes the cost award provisions of sections 1032 and 1033.5 applicable in judicial proceedings to

---

[7] 1997 amendments of section 998 (Stats. 1997, ch. 892, § 1, pp. 6389-6391) italicized below specifically authorized arbitrators to award costs under section 998, providing in pertinent part:

"(b) Not less than 10 days prior to commencement of trial *or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration*, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken *or an award to be entered* in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment *or award*, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. . . .

"(1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. *In the case of an arbitration, the offer with proof of acceptance shall be filed with the arbitrator or arbitrators who shall promptly render an award accordingly.*

"(2) If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial *or arbitration*.

" . . . [¶]

"(c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment *or award*, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court *or arbitrator*, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial *or arbitration*, or during trial *or arbitration*, of the case by the defendant.

" . . . [¶]"

compel contractual arbitration and to confirm, correct, or vacate contractual arbitration awards. Section 1293.2 states, "The court shall award costs upon any judicial proceeding under this title as provided in Chapter 6 (commencing with Section 1021) of Title 14 of Part 2 of this code." Section 1293.2 has been the basis for awarding litigation costs to parties who succeeded in resisting motions to compel arbitration[8] and also in obtaining confirmation[9] and vacation[10] of arbitration awards.[11]

## B. COSTS RECOVERABLE IN POST-ARBITRATION JUDICIAL PROCEEDINGS

Though parties who prevail in judicial proceedings to confirm an arbitration award are entitled to recover the costs for those proceedings, those parties have usually been denied recovery of their arbitration costs despite prevailing in the arbitration based on direct or indirect reliance on section 1284.2 of the CAA,

---

[8] *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 807 ["Expressway obtained a ' "simple, unqualified win" ' on the only contract claim at issue in the action—whether to compel arbitration under the Coordination Agreement."].

[9] *Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 261 (*Nicastro*) ["Because Nicastro was the prevailing party as a matter of law, the mandatory language of the contractual attorney fees clause and section 1293.2 entitle Nicastro to reasonable attorney fees and costs incurred in post-arbitration judicial proceedings."]; *Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 707 (*Corona*) ["Corona was entitled to recover his attorney fees and costs relating to the judicial proceedings."].

[10] *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 514 (*Marcus & Millichap*) [award of costs and attorney fees upheld].

[11] Client relies on *Guevara v. Brand* (1992) 8 Cal.App.4th 995, a decision by this court, as authorizing a judicial award of costs "after entry of judgment on a judicial arbitration award." (*Id.* at p. 996.) Because that case involved the distinct procedure of judicial arbitration and that statute (§§ 1141.10 through 1141.31) has its own costs provisions (§§ 1141.21, 1141.28), it affords us no guidance for contractual arbitration and the costs available under section 1293.2.

10

which states: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." We will review this precedent and explain how the California Supreme Court has established that section 998 creates an exception to section 1284.2.

In *Dickinson v. Kaiser Foundation Hospitals* (1980) 112 Cal.App.3d 952 (*Dickinson*) a patient who prevailed against a hospital in medical malpractice arbitration asked the court to confirm his award and also correct it to the extent the arbitrators denied him recovery of costs. The Second District Court of Appeal (Div. Five) determined that an award of arbitration costs was precluded by section 1284.2. (*Dickinson*, at p. 954.) The court explained: "In arbitration matters, the Legislature has carefully distinguished between costs incurred in the arbitration and costs incurred in superior court to enforce an arbitration award. (Compare . . ., § 1284.2 with . . ., § 1293.2; see *McRae v. Superior Court* (1963) 221 Cal.App.2d 166, 171-172 [*McRae*]; *Tipton v. Systron Donner Corp.* (1979) 99 Cal.App.3d 501, 507 [*Tipton*]; [citation].)" (*Dickinson*, at p. 954.)[12]

---

[12] The comparisons of sections 1284.2 and 1293.2 in *McRae* and *Tipton* on which *Dickinson* relied were dictum. Unlike *Dickinson*, neither opinion relied on section 1284.2 to deny a party's request for arbitration costs.

In *McRae*, *supra*, 221 Cal.App.2d 166, the issue was whether a party to ongoing arbitration could conduct discovery in the related lawsuit that was stayed pending the arbitration. The opinion contrasted the statutes to make the point that in the CAA, the Legislature had distinguished "judicial proceedings" referenced in section 1293.2 from the underlying arbitration. (*Id.* at p. 172.)

In *Tipton*, *supra*, 99 Cal.App.3d 501, the trial court awarded the parties that prevailed in the arbitration "the costs of both the arbitration and the court proceedings" for obtaining confirmation of the award. (*Id.* at p. 507.) Citing the

*(Continued)*

11

In *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812 (*Austin*), after an insured obtained a damage award in arbitration under uninsured motorist coverage, the insured sought arbitration costs after having the award confirmed. (*Id.* at p. 1814.) The Second District Court of Appeal (Div. Two) relied on the comparison of sections 1284.2 and 1293.2 in *Dickinson* and *Tipton* in concluding, "Here, the insurance policy, in harmony with . . . section 1284.2, specified that 'Costs, including attorney fees, are to be paid by the party incurring them.' [fn. omitted] Thus, appellant is not entitled to recover her costs of arbitration unless a different rule is mandated by the uninsured motorist statute." (*Id.* at p. 1816.) The court distinguished cases from other jurisdictions, stating "in none of the cases cited were there statutes similar to . . . sections 1284.2 and 1292.3 indicating a legislative policy requiring parties to bear their own costs in arbitration." (*Austin*, at p. 1817.)

Section 1284.2 does contemplate that the parties may make a different agreement about costs and they did so in *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809 (*DiMarco*), on which Attorney relies. There a real estate seller prevailed in arbitration against a buyer and asked the trial court to correct the arbitration award, as the arbitrator had denied attorney fees and costs to the party he had found to have prevailed, despite a contract provision that the prevailing party "shall be entitled to reasonable attorney's fees . . . ." (*Id.* at pp. 1812, 1815.) The Second District Court of Appeal (Div. Three) concluded that the arbitrator

---

two statutes, the court stated, "The California arbitration statutes distinguish between arbitration costs and costs of related judicial proceedings." (*Ibid.*) However, the appellate court interpreted the agreement between the parties as vesting "the court with jurisdiction to make the dual cost award." (*Id.* at p. 508.) It was a case where the parties had otherwise agreed about the costs of arbitration.

Cases postdating *Dickinson* have quoted or paraphrased its distinction of sections 1284.2 and 1293.2 in dictum. (E.g., *Woodard*, *supra*, 171 Cal.App.3d at p. 665.)

had exceeded his powers in denying the request for attorney fees contractually due after finding one party had prevailed.  (*Id.* at p. 1811.)  The opinion quoted *Dickinson* in contrasting sections 1284.2 and 1293.2 in order to conclude that the noticed motion procedure in section 1033.5 does not apply in arbitration proceedings.  "[I]t would appear the requirement of a noticed motion under section 1033.5 applies to a request in the superior court for attorney fees incurred in proceedings to correct, vacate or confirm an arbitration award, not to a request for attorney fees incurred in the underlying arbitration.  The determination of a claim for attorney fees incurred in prosecuting or defending the underlying arbitration proceeding is within the purview of the arbitrator, rendering the procedure of section 1033.5 inapplicable."  (*DiMarco*, at p. 1817.)

DiMarco* created a bifurcated procedure for recovering the costs of arbitration and litigation.  "Once the arbitrator makes a determination as to the amount of attorney fees and costs to which Chaney is entitled for the arbitration proceeding, Chaney may move in the superior court to confirm the award.  At that juncture, Chaney may bring a noticed motion pursuant to sections 1033.5 and 1293.2 to recover the reasonable amount of the attorney fees and costs which she incurred *in judicial proceedings.*"  (*DiMarco*, *supra*, 31 Cal.App.4th at pp. 1817-1818.)  *DiMarco* reversed a trial court's award of attorney fees attributable to the arbitration, and remanded the matter "to the trial court with directions to remand to the arbitrator for a determination of the amount of attorney fees and costs to which Chaney is entitled for the arbitration proceedings . . . ."  (*Id.* at p. 1818.)

Later decisions have followed these earlier decisions without expressly invoking section 1284.2.  In *Nicastro*, *supra*, 87 Cal.App.4th 253, on which Client relies, a client had successfully resisted a motion by his real estate broker to vacate an arbitration award that had denied a commission to the broker.  Consistent with its *DiMarco* decision, the Second District Court of Appeal (Div. Three) concluded that the trial court erred in denying the prevailing client "reasonable attorney fees

13

and costs incurred in postarbitration judicial proceedings" under section 1293.2. (*Nicastro*, at p. 261.)[13]

Among this precedent, only *Dickinson* and *Austin* denied judicial awards of arbitration costs based on section 1284.2. In the later 2006 decision of *Pilimai*, *supra*, 39 Cal.4th 133, on which Client relies, the California Supreme Court has cast doubt on those decisions or at least identified section 998 as an exception to section 1284.2, as it is to section 1032. The Supreme Court answered four questions: "(1) whether the cost-shifting provisions of . . . section 998 apply to [uninsured motorist] arbitrations [pursuant to Insurance Code section 11580.2]; (2) whether the award of such costs, together with the arbitration award, can exceed an insurer's 'maximum liability' under Insurance Code section 11580.2, subdivision (p)(4) . . . ; (3) whether prejudgment interest pursuant to Civil Code section 3291 is available for an uninsured motorist arbitration; and (4) whether, if costs are available under . . section 998, those costs include deposition and exhibit preparation costs." (*Pilimai*, at p. 136.)

Our concern with *Pilimai* is about the court's discussion of the types of costs that are recoverable postarbitration. In that case, in uninsured motorist arbitration proceedings an insured obtained a policy limit award that was silent on the subject of costs. (*Pilimai*, *supra*, 39 Cal.4th at p. 137.) The insured asked a court to confirm the award and to award arbitration costs based on section 998. The trial court determined that the insured had prevailed under section 998, but denied a cost award because it would exceed the policy limit authorized in

[13] Relying on *Nicastro* and section 1293.2, the Second District Court of Appeal (Div. Seven) in *Marcus & Millichap*, *supra*, 129 Cal.App.4th at pages 513-514, and the Fourth District Court of Appeal (Div. One) in *Corona*, *supra*, 107 Cal.App.4th at page 707, concluded that parties who prevailed in having arbitration awards either vacated (*Marcus & Millichap*) or confirmed (*Corona*) were entitled to recover their reasonable attorney fees and costs arising in the judicial proceedings.

14

Insurance Code section 11580.2, subdivision (p)(4). (*Pilimai*, at p. 138.) The Supreme Court first determined that uninsured motorist arbitration, though mandated by statute, is still contractual arbitration to which section 998 applies. (*Pilimai*, at pp. 141-142.) The court next determined that the maximum liability provision in the Insurance Code was not intended to limit cost awards under section 998. (*Pilimai*, at p. 145.)

As to the types of costs available, *Pilimai* reasoned that the costs available under section 998 include the costs enumerated under section 1033.5. (*Pilimai*, *supra*, 39 Cal.4th at p. 148.) The insurer relied on *Austin* in arguing that section 1284.2 precludes awarding arbitration costs for exhibits and depositions, while conceding the availability of expert witness costs as provided by section 998, subdivision (d). (*Pilimai*, at pp. 148-149.) The court responded: "*Austin* is distinguishable from the present case inasmuch as it concerned an award of costs pursuant to . . . section 1032. Here, we address costs awarded pursuant to . . . section 998, which now authorizes the award of costs after an arbitration." (*Pilimai*, at p. 149.)[14] Section 998, subdivision (d) specifically authorizes a discretionary award of the costs of expert witnesses. "Reading this section with . . . section 998, subdivision (a), it is apparent that the types of costs available to an arbitration plaintiff are those costs available under . . . section 1032, as enumerated in . . . section 1033.5." (*Pilimai*, at pp. 149-150.)

"Moreover, all that . . . section 1284.2 says about the kinds of costs at issue here —'expenses incurred by a party for his own benefit'—is that such costs are not to be included in the costs that the parties are to share." (*Pilimai*, *supra*, 39 Cal.4th at p. 150.) "[W]hile it is true, as the *Austin* court observed, that no provision of the CAA authorizes the award of arbitration costs absent agreement, .

---

[14] In distinguishing *Austin*, the Supreme Court did not discuss *Dickinson*, on which *Austin* had relied.

. . section 998 itself provides the statutory authorization for such costs." (*Pilimai*, at p. 150.) "We . . . conclude that arbitration plaintiffs such as Pilimai are eligible for deposition and exhibit preparation costs pursuant to . . . . section 998, subdivision (d)." (*Pilimai*, at p. 151.)  The Supreme Court remanded with directions "*to the trial court* to determine the proper cost award. . . ." (*Id.* at p. 152; our emphasis.)

We recognize, as Attorney points out, there was no argument in *Pilimai* that the insured should have asked the arbitrator, rather than the court, for an award of costs under section 998.  Of course an appellate opinion must be understood in light of the issues presented to the court and it does not serve as authority for issues not considered.  (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680; *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 64.)  *Pilimai* establishes, at the very least, that trial courts have the authority in arbitration confirmation proceedings to award costs of arbitration under section 998 when such a request has not been submitted to or decided by an arbitrator.  It also establishes that whatever the true scope of section 1284.2, section 998 is a statutory exception to any requirement that parties bear their own arbitration costs.

## C.  THE PROCEDURE FOR RECOVERING ARBITRATION COSTS

Cases predating and postdating *Pilimai* have concluded for policy reasons that any award of arbitration costs should be made by the arbitrator without focusing on the timing or procedure of making such a request of the arbitrator.

As noted, the decision in *DiMarco*, *supra*, 31 Cal.App.4th 1809, where a request for an award of attorney fees had been presented to the arbitrator, was premised on the arbitrator being responsible for awarding any attorney fees due for prevailing in an arbitration.  "An award of attorney fees for the arbitration itself is within the arbitrator's purview." (*Id.* at p. 1816.)  "Thus, the issue of the *amount* of attorney fees and costs to be awarded for the arbitration proceeding was properly a matter for the arbitrator." (*Ibid.*)  "Further, not only is the determination as to the amount properly within the purview of the arbitrator, but

16

we observe it is the arbitrator, not the trial court, which is best situated to determine the amount of reasonable attorney fees and costs to be awarded for the conduct of the arbitration proceeding." (*Id.* at pp. 1816-1817.)

*Corona*, *supra*, 107 Cal.App.4th 701, on which Attorney relies, did not mention *DiMarco* or section 1284.2 in answering "no" to what it called an issue "of first impression in California: where a party is required by contract to submit a dispute to binding arbitration, but does not request that the arbitrator decide his entitlement to attorney fees even though that issue was part of the submission, may a trial court nonetheless determine that issue and make an award of fees and costs incurred in the arbitration?" (*Corona*, at pp. 703-704.) *Corona* instead articulated a more general policy basis for its conclusion. The CAA, particularly section 1286, limits judicial review of arbitration awards to confirming, correcting, or vacating them. (*Corona*, *supra*, at p. 706.) "Under the statutory scheme, a party's failure to request the arbitrator to determine a particular issue within the scope of the arbitration is not a basis for vacating or correcting an award." (*Ibid.*) "Such an interpretation of the applicable statutes promotes the Legislature's determination that there is a ' "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*Ibid.*, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)

In *Maaso*, *supra*, 203 Cal.App.4th 362, on which the trial court and Attorney relied, the Second District Court of Appeal (Div. Two) followed *DiMarco* and *Corona* when a party sought a judicial award of arbitration costs under section 998. That case involved two contractual arbitrations of a medical malpractice claim, because the trial court had vacated the original arbitration award due to improper conduct by one of the party-arbitrators. (*Maaso*, at p. 368.) "During the course of the [second] arbitration proceedings Maaso's counsel advised the panel that Maaso had previously made a section 998 offer that was rejected by [the defendant], without stating the amount of the offer. Maaso did not request that the arbitrators rule on the issue of section 998 costs or seek to present

17

evidence on the issue." (*Maaso*, at pp. 368-369.) The arbitrators' award provided that costs and fees were according to the arbitration agreement. Maaso petitioned the court to confirm the award and to award section 998 costs. (*Maaso*, at p. 369.) The trial court granted the defendant's motion to tax costs, determining "that all costs associated with the arbitration, including section 998 costs, were within the sole purview of the arbitrators and not the court." (*Id.* at p. 369.)

*Maaso* quoted with approval what we have quoted above from *Corona* regarding the limited scope of judicial review of arbitration awards and the policy served by requiring presentation of all issues to the arbitrator. (*Maaso*, *supra*, 203 Cal.App.4th at pp. 377-378.) The court reasoned, "Although Maaso styled his petition as one to 'confirm' the award, he essentially sought 'correction' of the award by asking the court to add costs and interest not awarded by the panel, and which were in fact inconsistent with the panel's award." (*Id.* at p. 378.) The court noted the limited grounds for correcting an arbitration award in section 1286.6[15] and also stated, "where the entitlement to attorney fees is within the scope of the issues submitted to binding arbitration, arbitrators do not ' "exceed [ ] their powers" ' by denying a party's request for attorney fees, 'even where such a denial order would be reversible legal error if made by a court in civil litigation.' (*Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 784 [*Moore*]; *Moshonov v. Walsh* [(2000)] 22 Cal.4th [771,] 773 [*Moshonov*].)" (*Maaso*, at p. 378.)

---

[15] Section 1286.6 states that "the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that:

"(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or

"(c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

18

*Maaso* also quoted from *DiMarco* regarding the arbitrator being best situated to determine the amounts of reasonable attorney fees and expert witness costs and quoted with approval the trial court's statement that it would encourage forum shopping if section 998 costs after arbitration could be sought from either the arbitrator or a court. (*Id.* at p. 379.)

The court also stated, "The cases on which Maaso relies do not assist him. In *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, the court was not called upon to decide whether it was for the court or the arbitrator to make an award of section 998 costs, but to address other issues, including whether the cost-shifting provisions of section 998 and . . . section 1032 applied to uninsured motorist arbitrations mandated by Insurance Code section 11580.2." (*Maaso*, *supra*, 203 Cal.App.4th at p. 379.)

We do not agree with this indication that *Pilimai* is irrelevant, but we do agree with the policy that when a party has agreed to an alternative dispute resolution mechanism like arbitration and has broadly agreed to submit all issues to arbitration, then the party should submit all issues to arbitration, including a request for costs under section 998. Such a requirement serves "the principle of arbitral finality. . . ." (*Moshonow*, *supra*, 22 Cal.4th at p. 776.)

But we do not see in *Maaso* a discussion of practical and legal restrictions on presenting a request for costs under section 998. Under the terms of the statute, an arbitrator cannot compare the favorability of an arbitration award to a rejected offer of settlement until after the award is made. A section 998 determination necessarily must postdate an arbitration award.[16]

---

[16] In court, California Rules of Court governing prejudgment costs available under section 1032 contemplate serving a memorandum of costs within the earliest of either 15 days after service of the notice of entry of judgment or 180 days after entry of judgment. (Rule 3.1700(a) (formerly rule 870); *Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1012.) *Anthony v. City of Los Angeles*
(Continued)

19

In addition, we reiterate that the statute states in part, "If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, *it* shall be deemed withdrawn, and *cannot be given in evidence upon the trial or arbitration.*" (§ 998, subd. (b)(2); our emphasis.) As Client points out, a literal application of subdivision (b)(2) would prohibit a party from submitting a request for section 998 costs as an issue in advance of an arbitration hearing or even asking the arbitrator to reserve jurisdiction to make such an award. At oral argument, Attorney proposed that, to comply with section 998, a party should ask the arbitrator to make an interim award without answering the arbitrator's expected questions about why. We do not regard this as a reasonable, workable proposal. The best practice to avoid violating section 998, subdivision (b)(2) would be to present evidence of a rejected section 998 offer after an arbitration award resolves the underlying dispute.

Relying on *Maaso*, the trial court's tentative ruling was that "it was [i]ncumbent upon the defendant to raise the CCP 998 issue with the arbitrator on a timely basis." Attorney contends, "The fact that [Client's] counsel did not properly place the CCP §998 offer before the arbitrator before his award was issued and his jurisdiction extinguished is not the arbitrator's or court's fault. There are well established procedures to make the arbitrator aware of a CCP §998 offer before the arbitrator renders a final award. [Client] merely needed to inform the Arbitrator at the pre-hearing brief, the closing brief or the reply brief or during the multiple days of arbitration hearings that there was a CCP Section 998 offer applicable to this case and that the Arbitrator should issue an interim or partial final award retaining jurisdiction to review any CCP Section 998 offer and

(2008) 166 Cal.App.4th 1011 has pointed out that the Judicial Council Memorandum of Costs (Worksheet) includes expert fees awarded under section 998. (*Id.* at p. 1016.) There is a different rule addressing post-judgment motions claiming contractual attorney fees. (Rule 3.1702(b).)

briefing on that subject after an award on the merits is issued." We do not believe that such a pre-award request or alert would be consistent with the evidentiary restriction in section 998, subdivision (b)(2).

We requested supplemental briefing about whether *Maaso* considered this evidentiary restriction. Attorney correctly notes that *Maaso*, *supra*, 203 Cal.App.4th 362 did quote this subdivision. (*Id.* at p. 376.) However, as Client points out, *Maaso* did not discuss how this evidentiary restriction should affect the presentation of a request for section 998 costs to an arbitrator. Instead, the court simply concluded, "Maaso was not entitled to these costs and interest because he never requested these enhancements from the arbitrators. While Maaso put the panel on notice that a section 998 offer had been made, it is undisputed that he did not state the amount or seek to present evidence on the issue." (*Maaso*, at p. 377.) Contrary to Attorney's oral argument, *Maaso* did not attempt to prescribe how to present a section 998 request to an arbitrator.

The conundrum created by *Maaso* has been noted in Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2015). Paragraph 5:402.13 notes that a rejected offer is inadmissible in evidence. (*Id.* at p. 5-371.) Paragraph 5:402.14 states, based on *Maaso*, that "[t]he arbitrator must be informed, however, of the rejected CCP § 998 offer prior to making a final award in order to impose any applicable costs 'penalties' . . . ." (*Ibid.*) The comment in paragraph 5:402.15 observes: "The statute does not address how this is to be accomplished (the offer cannot be received in evidence). The issue is jurisdictional because once a final award is made, arbitrators have no power to make a 'supplemental award' on matters not covered by the original award [citation]. [¶] Therefore, arbitrators should determine before making a final award *whether* either party rejected a § 998 offer from the other (without considering who made the offer or the amount). If such an offer was made, at the conclusion of the evidentiary hearing, the arbitrator should expressly reserve jurisdiction to augment or withhold costs pursuant to CCP § 998, if applicable."

21

(*Id.* at p. 5.372.) This comment appears to contemplate that arbitrators in every case will need to make a section 998 inquiry sua sponte, as the parties are precluded from introducing such evidence.

Unlike the Practice Guide, we believe there are solutions to this conundrum other than requiring all arbitrators to make sua sponte section 998 inquiries. In comparable circumstances, namely requests for contractual attorney fees and not section 998 costs, courts have recognized an arbitrator's authority to make supplemental awards, either by generally awarding attorney fees with the amount to be determined later in a supplemental award (*Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1105-1106), or by awarding fees and reserving jurisdiction to calculate the amount (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 159-160).

Some opinions have even concluded that arbitrators have implicit authority to correct their own oversights in failing to award requested fees. In *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865 (*Century City Medical Plaza*), the arbitrator had "failed to rule on the expressly submitted issues of the appellant's claimed right to be awarded interest, costs and attorney fees as the successful party in the arbitration." (*Id.* at p. 867.) Relying on *A. M. Classic Const., Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470 (*A. M. Classic*), the court held that an arbitrator can correct his own error under the following circumstances: An arbitrator may employ a supplemental award to correct "a ruling on one or more submitted issues as to which the parties were entitled to a decision but which was omitted from the initial award through the arbitrator's mistake, inadvertence or excusable neglect . . . , *provided* such supplemental award (1) is requested and acted upon within the time allowed for the correction of an award by either statute or any controlling rules applicable to the arbitration, (2) is made prior to confirmation of the original award (so that they both may be considered for confirmation together as would have been the case but for the inadvertent omission), (3) is not inconsistent with other findings on the

22

merits of the controversy and (4) does not cause demonstrable prejudice to the *legitimate* interests of any party." (*Century City Medical Plaza, supra*, at p. 881; fn. omitted.)[17] The time for an arbitrator's correction of an award under section 1284 is "not later than 30 days after service of a signed copy of the award on the applicant."

While the above authority is limited to correcting an arbitrator's oversight, which is not our situation, it is still worthwhile to determine what these decisions consider to be the source of an arbitrator's authority to correct his or her own oversights. *A. M. Classic*, *supra*, 70 Cal.App.4th 1470 noted that arbitrators have a limited authority to correct their awards under section 1284 of the CAA.[18] (*A. M. Classic*, at p. 1476.) The Second District Court of Appeal (Div. Six) observed that while section 1284 did not authorize correcting oversights, "[t]he absence of a statutory provision authorizing amendment of an award does not deprive the arbitrator of jurisdiction to do so. The parties concede that the arbitrator had authority to decide the entire dispute . . . ." (*A. M. Classic*, at p. 1476.) "In our view, the arbitrator was simply finishing his assignment by making a complete and full award on the matters submitted to him for resolution." (*Ibid.*) "[I]t would be irrational to discard all the time and money spent by the parties where an arbitration award is inadvertently incomplete in one respect and where the oversight can be corrected without substantial prejudice to the legitimate interests

---

[17] We recognize there are limits to arbitrators correcting awards. (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 95-96 [unable to increase the amount of attorney fees and costs previously awarded]; *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 15 [unable to add previously denied attorney fees based on new evidence] (*Cooper*).

[18] Section 1284 provides in part, "The arbitrators, upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6 not later than 30 days after service of a signed copy of the award on the applicant."

23

of a party." (*Id.* at p. 1478.) *A. M. Classic* thus predicated the authority to self-correct on the arbitrator's original authority to decide the entire dispute. The court did not discuss any particular rules of arbitration as conveying this authority.

In *Century City Medical Plaza*, *supra*, 86 Cal.App.4th 865, the Second District (Div. Three) followed the lead of *A. M. Classic*. The court first pointed out an arbitrator's limited statutory authority to correct an award under section 1284. (*Century City Medical Plaza*, at pp. 877-878.) "[T]he power of an arbitrator to *correct* an award after it has been issued to the parties is limited to *evident* miscalculations of figures or descriptions of persons, things or property (§ 1286.6, subd. (a)) and *nonsubstantive* matters of form that do *not* affect the merits of the controversy. (§ 1286.6, subd. (c).)" (*Century City Medical Plaza*, at p. 877.)

The court then quoted the holding of *A. M. Classic* (*Century City Medical Plaza*, at p. 880) and adapted it as its own holding, adding the time restriction in section 1284 for self-correction. (*Id.* at p. 881.) Regarding the time restriction, the court noted: "This condition is not mentioned in *A. M. Classic*, but we believe it is necessarily required. A judicially endorsed right to modify or amend an award upon proof of an inadvertent omission should not enjoy more generous temporal restrictions than those provided for expressly authorized corrections or modifications under section 1284 (see fn. 17, *ante*) or applicable arbitration rules (see, e.g., AAA rule 48 [see fn. 9, *ante*]) in those cases where the parties have agreed to be bound by such rules." (*Century City Medical Plaza*, at p. 881, fn. 25.) This quotation illustrates that these decisions derived an arbitrator's power of self-correction from the arbitrator's original authority to decide and not from any special authority conferred by statute (§ 1284) or the applicable arbitration rules.

Here we are not confronted with an arbitrator who inadvertently omitted deciding a presented issue. (*Cooper*, *supra*, 230 Cal.App.4th at p. 15.) Therefore, we consider the arbitrator's authority under the applicable AAA's Commercial Arbitration Rules and Mediation Procedures ("Comm. Arb. Rules") effective on

24

October 1, 2013, after taking judicial notice of them as did the appellate court in *Century City Medical*, *supra*, 86 Cal.App.4th at p. 870. (Evid. Code, §§ 452, subds. (g) & (h), 455, subd. (a), and 459, subd. (c).)[19]

The parties agree that an AAA arbitrator has a limited authority to correct "clerical, typographical, or computational errors" in a final award. (Comm. Arb. Rules (2013) R-50.)[20] However, the parties also recognize that the Commercial Arbitration Rules empower an arbitrator to make "interim, interlocutory, or partial" awards "[i]n addition to a final award" in order to "assess and apportion the fees, expenses, and compensation related to such award . . . ."[21] (*Id.* at R-47, subd. (b).) We note that the rules authorize "an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." (*Id.* at R-47, subd. (d) ii.) However the Commercial Arbitration Rules have no specific provision for awarding costs authorized by section 998. Any arbitral authority to award costs is presumably subsumed in the authority to

---

[19] We note that the arbitration rules noticed in *Century City Medical* were the "AAA's 'Commercial Dispute Resolution Procedures [ ] Amended and Effective on January 1, 1999 . . . .' " (*Century City Medical*, at p. 869, fn. 9.)

[20] Rule 50 ("R-50") states in part: "Within 20 calendar days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided." (Comm. Arb. Rules, *supra*, R-50.) An introductory section entitled "Standard Arbitration Clause" states in part, "The services of the AAA are generally concluded with the transmittal of the award."

The time for an arbitrator to made an award begins running when the hearing is closed. (*Id.* at R-39, subd. (c).) The hearing is closed when the arbitrator declares it closed. (*Id.* at R-39, subds. (a), (b).)

[21] Rule 47, subdivision (b) states: "In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate."

25

award expenses. It is up to the arbitrator to "interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." (Comm. Arb. Rules, *supra*, R-8.)

We see no need to burden arbitrators with the obligation in every case to inquire whether a section 998 offer had been made and rejected. Rather, the burden should be placed on the party seeking the benefit of section 998 to request an award of its post-offer costs. Rather than requiring this party to violate section 998, subdivision (b)(2) by prematurely disclosing the existence of a rejected offer in arbitration proceedings, we believe a party's section 998 request should be deferred until after the arbitration award is made. If and when a party makes a section 998 post-award request, an AAA arbitrator is empowered to recharacterize the existing award as interim, interlocutory, or partial and proceed to resolve the section 998 request by a subsequent award.[22]

---

[22] While many appellate decisions have discussed interim arbitration awards without considering the authority to make them, *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415 did address the issue, concluding that an arbitrator was authorized to issue a partial final award giving one party an option to purchase shares of stock. (*Id.* at pp. 1426-1427.) The court identified two sources of this arbitral authority, the "Shareholders Agreement contain[ing] reciprocal buy-sell provisions giving each party an opportunity to buy the other out . . ." (*id.* at p. 1439) and a provision in AAA's Commercial Arbitration Rules (effective July 1, 1996) that " 'The arbitrator may grant *any remedy or relief that the arbitrator deems just and equitable* and within the scope of the agreement of the parties . . . .' " (*Id.* at pp. 1419, fn. 2, 1437-1438.) *Roehl v. Ritchie* (2007) 147 Cal. App. 4th 338 followed *Hightower* in upholding an arbitrator's authority "to reserve jurisdiction to make incremental decisions." (*Id.* at p. 351.)

Similarly in *Greenspan v. LADT, LLC* (2010) 185 Cal. App. 4th 1413, the Second District Court of Appeal (Div. One) stated at page 1455: "The arbitrator interpreted JAMS Rule 24 as a grant of authority to render successive awards, to request additional briefs and declarations on issues not resolved in the first award, and to establish a schedule to govern the supplemental briefing and the Final Award. Under JAMS Rule 11(a), the arbitrator's interpretation and application of the Rules is final. We therefore defer to the arbitrator's decision that the Rules

*(Continued)*

26

In this case the arbitrator's award described itself as "intended to be a complete disposition of all claims and counterclaims submitted to this Arbitration" and it should be regarded as a complete disposition of *submitted claims*. However, it must be acknowledged that Client was inhibited by statute from submitting his section 998 claim until after an award resolving the underlying dispute.[23] The delayed submission resulted from a statutory restriction and not Client's mistake or inadvertence. When Client properly tendered this separate issue after the arbitration award, the arbitrator should have exercised his authority to deem the existing award to be partial, interlocutory, or interim, rather than final, and should have addressed Client's section 998 claim for expenses on the merits, as strongly encouraged by the judicial policy favoring arbitral finality. We see nothing in the Commercial Arbitration Rules that prevented the arbitrator from reaching the merits of Client's section 998 request as it was appropriately presented after the award.

**D. REMEDIES FOR AN ARBITRATOR'S REFUSAL TO HEAR OR DECIDE AN ISSUE**

There are several statutory grounds for judicially correcting or vacating awards by arbitrators. Among the statutory grounds for vacating an arbitration award in section 1286.2, subdivision (a) are "(5) The rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence

---

permitted him to render the awards in the manner and on the dates he chose." In *Cooper*, *supra*, 230 Cal.App.4th 1, Division Four of the Second District distinguished *Greenspan* (*id.* at p. 20) and concluded that no JAMS Rule, including 24, expanded an arbitrator's power to correct an award beyond the restrictions stated in section 1284 and *Century City Medical*. (*Cooper*, at pp. 16-18.) As we are not considering JAMS arbitration rules, we need not resolve this conflict.

[23] Parties may stipulate to waive the restrictions of section 998, subdivision (b)(2), but that did not occur here.

27

material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

One basis for judicial intervention has been the failure to consider a submitted issue. As section 1283.4 requires an arbitral award to make "a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy," "[i]t has been held that where the record shows that an issue has been submitted to an arbitrator and that he totally failed to consider it, such failure may constitute 'other conduct of the arbitrators contrary to the provisions of this title' justifying vacation of the award . . . ." (*Rodrigues v. Keller* (1980) 113 Cal.App.3d 838, 841 (*Rodrigues*).)[24] The appellate court in *Rodrigues* rejected a claim "that any issue was submitted to the arbitrator which he totally failed to consider." (*Id.* at p. 842.) But the failure to consider a submitted issue is a different ground for vacating an award than refusal to "hear" material evidence. *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58 made this distinction. "First, we must determine whether alleging a failure to *consider* evidence is tantamount to alleging a refusal to *hear* evidence. [fn. omitted] We believe that it is not." (*Id.* at p. 63.) "It is obvious from [the dictionary] definitions that the two words are not synonymous. One cannot 'consider' what one has refused to 'hear.' Legally speaking the admission of evidence is to hear it, and the weighing of it is to give it consideration." (*Ibid.*) In that case there was no allegation of a refusal to hear.

In *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524 (*Burlage*), the appellate court affirmed the trial court's vacation of an award because the

---

**24** We note that of the six cases *Rodrigues* cited to support vacating an arbitration award due to an arbitrator's failure to consider all issues, only two of them are direct authority, *Banks v. Milwaukee Ins. Co*. (1966) 247 Cal.App.2d 34, 39, and *M. B. Zaninovich, Inc. v. Teamster Farmworker Local Union 946* (1978) 86 Cal.App.3d 410, 415.

28

arbitrator had excluded material evidence. In an arbitration by a property buyer seeking damages from the seller for failing to disclose the property's boundaries, the arbitrator awarded the buyer damages for nondisclosure after excluding evidence that there had been an agreed lot line adjustment before the arbitration hearings were held. (*Id.* at pp. 527-528.) The appellate court asked, "What could be more material than evidence that the problem was 'fixed' and there are no damages?" (*Id.* at p. 530.) "The parties to an arbitration have bargained for a final and binding decision. (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 10.) But without the opportunity to present material evidence, Spencer did not receive the benefit of that bargain." (*Burlage*, at p. 531.)[25]

The facts before us reveal that the arbitrator refused to hear evidence of Client's section 998 settlement offer. This is not a case where Client has sought to reopen the arbitration hearings to present new evidence on a submitted issue. (Compare *Cooper*, *supra*, 230 Cal.App.4th at p. 20.) The section 998 issue had not been submitted before the award was made. Nor is this a case where Client submitted the issue to the arbitrator and presented evidence and now claims a legal error in the arbitrator's decision. The CAA does not allow courts to correct legal errors by arbitrators on submitted issues. An arbitrator's powers are not necessarily exceeded simply because the award contains a legal error. (*Moshonov*, *supra*, 22 Cal.4th at p. 779; *Moore*, *supra*, 22 Cal.4th at pp. 787-788.)

The companion cases of *Moshonov* and *Moore* both distinguished *DiMarco* rather than overruling it. *Moore* noted that neither case presented *DiMarco*'s issue whether "an arbitrator's refusal to award fees expressly mandated by the

---

[25] In the recent case of *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, the appellate court concluded that arbitrators had failed to consider material evidence and upheld a trial court's vacation of an award. (*Id.* at pp. 1107-1108.)

underlying contract may be judicially corrected under section 1286.6." (*Moore*, *supra*, 22 Cal.4th at p. 789.)

Here, we not only have an arbitrator's refusal to award mandatory section 998 costs, but also a refusal even to hear evidence relevant to the section 998 offer and the issue of mandatory and discretionary costs under section 998. We have concluded above that his inaction was unjustified by the parties' submissions and the applicable arbitration rules.

As the arbitrator did not decide Client's section 998 request, the trial court might correct the award under section 1286.6, subdivision (b) "without affecting the merits of the decision upon the controversy submitted," but only after finding an arbitral excess of power. In supplemental briefing, Client contends that the arbitrator exceeded his powers, but we need not reach that contention.

We recognize that a trial court is not authorized to vacate an award unless a party has filed a petition or response asking the court to either vacate or correct the award. (§ 1286.4.) Just as *Maaso* construed a petition to confirm an award as essentially a petition to vacate an award (*Maaso*, *supra*, 203 Cal.App.4th at p. 378), we construe Client's combined motions to confirm the arbitration award and to make the section 998 award declined by the arbitrator as essentially a petition to correct or vacate the award. In supplemental briefing, Attorney contends that Client failed to present a basis for vacating or correcting the award. We disagree for the reasons stated above. We note that Attorney's summary of section 1286.2, subdivision (a)(5) omits the relevant language about a refusal to hear material evidence.

We have concluded that the arbitrator should have reached the merits of Client's post-award section 998 request by recharacterizing his final decision as an interim or partial final decision. We note that when a trial court vacates an arbitration award because the arbitrator refused to hear material evidence, the court's power to remand the matter to the same arbitrator is limited. "If the award is vacated on the grounds set forth in paragraph (4) or (5) of subdivision (a) of

Section 1286.2, the court with the consent of the parties to the court proceeding may order a rehearing before the original arbitrators." (§ 1287.) This restriction should not preclude Client from obtaining a decision on the merits of his section 998 request. If the parties in this case do not consent to a rehearing by the original arbitrator, the trial court is required under *Pilimai* to decide Client's section 998 request.

## IV. DISPOSITION

The orders confirming the arbitration award and denying Client's request for section 998 costs are reversed. The court is directed to enter an order partially vacating the award and, with the parties' consent, to order a hearing on Client's request for section

998 costs before the same arbitrator so that the arbitrator may make an additional award. If the parties do not consent or the arbitrator again refuses to reach the merits of the section 998 request, the court shall hear and determine Client's request for section 998 costs. Client is entitled to costs on appeal.

_____
WALSH, J. [*]

WE CONCUR:

_____
RUSHING, P.J.

_____
PREMO, J.

_____

[*]Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          Santa Clara County Superior Court
                                      Superior Court No.: 112CV231939

Trial Judge:                          The Honorable
                                      William J. Elfving

Attorneys for Appellant               Ellahie & Farooqui
Shiraz M. Shivji:
                                      Javed I. Ellahie
                                      Omair Farooqui

Attorneys for Respondent              Law Offices of Nicholas D. Heimlich
Alan Heimlich:
                                      Nicholas D. Heimlich