Filed 5/21/24  Nowzari v. Torrance Memorial Medical Center CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FARHAD NOWZARI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>TORRANCE MEMORIAL MEDICAL CENTER et al.,<br><br>Defendants and Respondents. | B321862, consolidated with B324119<br><br>(Los Angeles County Super. Ct. No. 21STCP02300)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 2, 2024, be modified as follows:

1. On page 13, footnote 7, after the sentence ending "pursuant to that contract," add the following paragraph:

Along similar lines, Nowzari asserts in his petition for rehearing that the Medical Executive Committee's failure to object to his decision to pursue arbitration under section 809.2 somehow formed a "written agreement to submit to arbitration," triggering the CAA's protections (Code Civ. Proc., § 1281). We reject this argument, in part because it would expand the contract-contingent CAA to apply to noncontractual arbitrations and thereby negate statutory limits on its applicability.

2. On page 13, immediately following the parenthetical citation "(*Hongsathavij v. Queen of Angels/Hollywood Presbyterian Medical Center* (1998) 62 Cal.App.4th 1123, 1142.)," add as footnote 8 the following footnote, which will require renumbering of all subsequent footnotes:

> 8    Nowzari argues in his petition for rehearing that "'even the appearance of bias'" is enough, but the case he relies on for this principle—*FCM Investments, LLC v. Grove Pham, LLC* (2023) 96 Cal.App.5th 545, 555—was applying the CAA and is therefore inapt.

*    *    *

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

LUI, P. J.                    CHAVEZ, J.                    HOFFSTADT, J.

Filed 5/2/24  Nowzari v. Torrance Memorial Medical Center CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FARHAD NOWZARI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TORRANCE MEMORIAL MEDICAL CENTER et al.,<br><br>    Defendants and Respondents. | B321862, consolidated with B324119<br><br>(Los Angeles County Super. Ct. No. 21STCP02300) |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Joel Bruce Douglas and Edward Idell for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza and Cassidy C. Davenport for Defendants and Respondents.

* * * * * *

The peer review body of a hospital restricted a urology physician's privileges after three of his patients died in a relatively short period of time. That decision was upheld by an arbitrator after a hearing, and then by the review board of the hospital's board of trustees. The physician then petitioned for a writ of mandate to overturn the review board's decision, but his petition was denied. We conclude that this denial as well as the attorney fees awarded as a sanction for the physician's unfounded and unreasonable claims were appropriate. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

#### A.    *The parties*

Farhad Nowzari, M.D. (Nowzari), obtained his medical degree in 1994 and is a board-certified urologist. Since 2002, Nowzari has been a member of the Medical Staff at Torrance Memorial Medical Center (the Hospital) and, until 2018, enjoyed unrestricted urological and surgical privileges at the Hospital.

#### B.    *The three patient deaths*

Three patients under Nowzari's care at the Hospital died within a five-month period between June and November 2017:

●    The first patient was an 86-year-old man. Nowzari performed a cystoscopy to evaluate a bladder mass on June 15, 2017. Two days later, the patient suffered from renal failure and died.

2

- The second patient was a 75-year-old woman. Nowzari performed a cystoscopy to remove a kidney stone and to install a catheter to treat the patient's sepsis on July 5, 2017. A week later, the patient suffered from respiratory failure and septic shock and died.

- The third patient was an 82-year-old man. Nowzari performed a cystoscopy, ureteroscopy, and replaced a stent on November 6, 2017. The patient's blood pressure dropped following the procedures. The day after the surgery, he died.

### C. *Investigation of the patient deaths*

In March 2018, the urology subcommittee of the Medical Staff reviewed these three patient deaths and preliminarily determined that Nowzari's treatment of the patients fell below the standard of care. Before proceeding further, the subcommittee invited Nowzari to a meeting, at which he disclaimed all "culpability" for the deaths. The subcommittee also referred the matter to an outside, independent reviewer, who recommended that the Medical Staff "initiate formal corrective action" in light of the "poor quality [of] care" tendered by Nowzari.

### D. *Peer review*

The Medical Staff is responsible, among other things, for overseeing the "quality of medical care" at the Hospital. To discharge that responsibility, the Medical Staff has a standing peer review body called the Medical Executive Committee.

#### 1. *Summary suspension*

On August 13, 2018, and based on the recommendation of the urology subcommittee, the Medical Executive Committee summarily suspended Nowzari's membership in the Medical Staff and all of his privileges with the Hospital.

3

## 2. *Restriction of privileges and order for further evaluation*

On August 22, 2018, the Medical Executive Committee held a meeting to further consider its initial remedy. Nowzari attended the meeting, but the committee was "concerned" by his "self-serving" explanation of the patients' deaths; more to the point, the committee questioned whether Nowzari is the type of physician "who does many procedures even on high risk patients without concern whether the risks outweigh the benefits to patients." The Medical Executive Committee ultimately lifted its prior suspension, and instead summarily imposed restrictions on Nowzari's membership and privileges—namely, the committee (1) restricted Nowzari's privileges except for assisting in surgery and providing inpatient consultations (which would have to be overseen by another urologist), and (2) removed him from emergency call coverage for urology. To "understand the steps that will need to be taken in order for [him] to potentially regain [his] full surgical privileges," the committee also required Nowzari to undergo a competency assessment from the Physician Assessment and Clinical Education (PACE) Program at UC San Diego.

## 3. *Results of evaluation and further recommendations*

In its February 2019 report assessing Nowzari's competence, PACE rated Nowzari a "3"—on a scale of "1" to "4," with "4" being worst—which constituted a "pass with recommendations" in light of "[s]ignificant deficiencies" that precluded Nowzari from "reaching his[] full potential." Before allowing Nowzari to regain full privileges, PACE recommended that he (1) be proctored for all surgeries for at least three months,

and for at least five major surgeries; (2) undergo a "comprehensive fitness for duty neuropsychological evaluation," which PACE offered to provide; (3) participate in "a random, unannounced toxicology screening"; and (4) complete a records-keeping course.

The Medical Executive Committee adopted PACE's recommendations with two pertinent modifications—namely, (1) rather than having Nowzari's surgeries proctored for a fixed number of months, the committee ordered Nowzari to be proctored for a fixed number of surgeries; and (2) rather than Nowzari completing *any* neuropsychological evaluation, the committee ordered Nowzari to be evaluated by PACE. What is more, the committee specified that Nowzari had to first complete the neuropsychological evaluation before he could begin the proctored surgeries.

### 4. *Revised evaluation*

After Nowzari contacted PACE to contest his score and its recommendation of a neuropsychological evaluation, PACE issued an updated assessment that rated him a "2" on its four-point scale, but this change did not alter its recommendations. PACE expressly found that Nowzari's challenge to its recommendation that he undergo a neuropsychological evaluation "did not have merit."

### E. *Nowzari's noncompliance*

In December 2019, Nowzari informed the Medical Executive Committee that he had completed the records-keeping course. He also inaccurately claimed that his resumption of proctored surgeries was "not conditioned on a neuro-psychological evaluation" in light of PACE's updated assessment, but nevertheless submitted the results of a fitness-for-duty

evaluation conducted by a neuropsychologist *he had selected* (rather than by PACE); that psychologist opined that Nowzari was "neuropsychologically fit for duty as a practicing urologist."

The Medical Executive Committee retained an independent reviewer to examine the evaluation Nowzari proffered, and the reviewer expressed "a number of concerns." The committee accordingly advised Nowzari that he had not satisfied the neuropsychological evaluation requirement and that he would thus not be permitted to conduct proctored surgeries or move toward regaining his full privileges.[1]

### F. *Nowzari's challenge to the peer review decision*

#### 1. *Hearing before an arbitrator*

Nowzari exercised his right to a hearing to contest the peer review body's—that is, the Medical Executive Committee's—initial and subsequent recommendations before they became final. Nowzari had this right under the Business and Professions Code as well as under the Hospital's Bylaws (the Bylaws). (Bus. & Prof. Code, §§ 805, subd. (a)(1)(B)(i), 809, subd. (b), 809.1.)[2] Although the Bylaws only guaranteed him a hearing before a

---

[1]    In his brief and at oral argument, Nowzari asserts that counsel for the Medical Executive Committee later "conceded" that it was ethically "improper" to require Nowzari to have his neuropsychological evaluation conducted by PACE. This is a complete misrepresentation of the record. What the record actually contains is the independent reviewer's testimony that the Medical Executive Committee's counsel shared with her his view that it would be "unethical" for the independent reviewer to offer an opinion on Nowzari's neuropsychology based on the report prepared by Nowzari's neuropsychologist.

[2]    All further statutory references are to the Business and Professions Code unless otherwise indicated.

6

three-member panel drawn from the Medical Staff (which the Bylaws labeled a "Judicial Review Committee") and overseen by a hearing officer, section 809.2, subdivision (a), guarantees the option of a hearing before a panel of physicians *or* an arbitrator, and Nowzari exercised his statutory right to have his hearing before an arbitrator. After many back-and-forth proposals, Nowzari and the Medical Executive Committee mutually agreed on a specific arbitrator, despite Nowzari's awareness that the selected arbitrator's prior experience had been "principally on the side of representing medical staff."

The evidentiary hearing before the arbitrator spanned 12 evening sessions in November and December 2020. Consistent with statutory law, the Medical Executive Committee bore the burden of establishing that its recommendations were "reasonable and warranted." (§ 809.3, subds. (b)(1), (b)(3).) Toward that end, the parties called "numerous witnesses" and admitted "thousands of pages of exhibits" into evidence.

On March 3, 2021, the arbitrator issued a 28-page decision. Procedurally, the arbitrator rejected Nowzari's contentions that the arbitrator had engaged in impermissible ex parte communications and that the attorney for the Medical Executive Committee (opposing counsel) had "a vendetta against him"; the arbitrator found these contentions "baseless," "unsupported" and "false." On the merits, the arbitrator upheld the Medical Executive Committee's initial and revised recommendations, finding (1) the "initial suspension . . . reasonable and warranted" "[i]n light of the justified patient safety concerns . . . at the time" and in light of the independent review of the three patient deaths expressing the same concerns; and (2) "the lesser restrictive summary restrictions . . . reasonable and warranted, including

7

the requirement that Dr. Nowzari undergo a neuropsychological evaluation," which was independently recommended by PACE, thereby confirming the "sensib[ility]" of that requirement. The arbitrator noted Nowzari had failed to sufficiently rebut the Medical Executive Committee's evidence.

2. *Appeal of hearing*

Nowzari next exercised his right under the Bylaws and under the Business and Professions Code (§ 809, subd. (b)) to appeal the arbitrator's decision to the appeal board of the Hospital's board of trustees (the Appeal Board). There, Nowzari argued that (1) the arbitrator failed to disclose his "long, close, one-hand-washing-the-other relationship going back years" with opposing counsel; (2) the arbitrator was "secretly conspiring [with opposing counsel] against" Nowzari, based on Nowzari's counsel's declaration accusing the arbitrator and opposing counsel of speaking with one another secretly on a "separate Zoom conference" on video *during the hearing*; and (3) the arbitrator's findings were "not supported by substantial evidence."

Following further briefing and a hearing, the Appeal Board on June 16, 2021, issued a 25-page ruling affirming the arbitrator's decision. The Appeal Board rejected Nowzari's claim that the arbitrator erred in not making disclosures required by California's arbitration statutes, concluding those statutes were inapplicable. The Appeal Board rejected Nowzari's claim that the peer review hearing was unfair due to ex parte communications and other bias because "no cognizable evidence in the record" supported his "sweeping contention" and "hyperbolic assertions" "that virtually everyone involved in the peer review process, from beginning to end, was biased and conspired against him." And the Appeal Board ruled that "substantial evidence supports the

8

[a]rbitrator's decision that, based on the information available . . . at the time," both the summary suspension and the subsequent, summary restrictions on Nowzari's privileges were "reasonable and warranted."

## II. Procedural Background

### A. *Petition for writ of administrative mandamus*

On July 16, 2021, Nowzari petitioned the trial court for a writ of administrative mandamus against the Hospital and the Medical Staff to set aside all the decisions affecting his physician privileges, relying chiefly on the same three grounds he asserted before the Appeal Board.[3]

Following a full round of briefing and a hearing, the trial court issued a 28-page decision denying Nowzari's petition. The court rejected Nowzari's claim of arbitrator bias, reasoning that (1) California's disclosure statutes governing contractual arbitration did not apply to Nowzari's peer review hearing; and (2) Nowzari failed to meet the default, due process-based standard for disqualification. The court next found Nowzari's claim of ex parte communications between the arbitrator and opposing counsel to be a "scurrilous and unsupported accusation" "based on conjecture and speculation without supporting evidence"; the court went so far as to chastise Nowzari and his attorney that the accusation of "serious misconduct" "without a

---

[3] Nowzari erroneously named the Medical Executive Committee of the Medical Staff instead of simply the Medical Staff. He also erroneously named the board of trustees of the Hospital instead of simply the Hospital. The judgment reflects the correct party names.

Nowzari also named as defendants the Hospital's fundraising foundation and an affordable care company, but later dismissed them.

good faith basis" had "no business in a brief" and undermined the "integrity of our adversary legal process." Finally, the court found that the peer review decision was supported by substantial evidence, and that Nowzari's two-sentence challenge to that evidence in his brief failed to prove otherwise.

Following entry of judgment for the Hospital and the Medical Staff, Nowzari timely appealed.

### B.     *Postjudgment award of attorney fees*

While Nowzari's appeal was pending, the Hospital and the Medical Staff moved for statutory attorney fees as a sanction against Nowzari for pursuing claims in his writ petition that lacked legal or factual foundation or were unreasonable.[4] On October 4, 2022, the trial court awarded the Hospital and the Medical Staff two-thirds of their requested fees—or, $47,513.67.

Nowzari timely appealed that postjudgment order, and this court consolidated the two appeals.

## DISCUSSION

In this consolidated appeal, Nowzari attacks both the Appeal Board's final peer review decision and the trial court's award of attorney fees.

## I.     Peer Review Decision

Nowzari argues that the peer review determination must be set aside because (1) the arbitrator was required to disclose certain conflicts of interest, (2) the arbitrator engaged in impermissible ex parte communications, and (3) the arbitrator's decision is not supported by substantial evidence. Because Nowzari's petition for a writ of administrative mandamus is

---

4     They also filed a memorandum of costs, but there is no indication in the record that Nowzari challenged any award of costs.

10

necessarily directed at *final* administrative action (§ 809.8; Code Civ. Proc., § 1094.5; *Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1499 (*Smith I*)), we must construe Nowzari's attacks as assailing the ruling of the Appeal Board (rather than of the arbitrator). We stand in the shoes of the trial court and review any factual findings *by the Appeal Board* for substantial evidence, and review any legal questions, including those regarding the fairness of the proceedings and statutory interpretation, de novo. (Code Civ. Proc., § 1094.5, subd. (d); *Bode v. Los Angeles Metropolitan Medical Center* (2009) 174 Cal.App.4th 1224, 1236; *Ellison v. Sequoia Health Services* (2010) 183 Cal.App.4th 1486, 1495-1496; *Sitrick Group, LLC v. Vivera Pharmaceuticals, Inc.* (2023) 89 Cal.App.5th 1059, 1065 (*Sitrick*).)

### A. *Arbitrator's failure to disclose publicly available information prior to the peer review hearing*

Nowzari argues that the arbitrator erred in failing to disclose two prior peer review proceedings in which the arbitrator and opposing counsel had been involved—namely, (1) a 2002 proceeding in which the arbitrator served as counsel for a medical staff and opposing counsel served as a hearing officer, and (2) a 2014 proceeding in which the arbitrator served as a hearing officer and opposing counsel served as counsel for a medical staff.[5] Both proceedings were publicly discoverable. Nowzari argues that this nondisclosure (1) entitles him to an order

---

[5] At oral argument, Nowzari claimed that the arbitrator and opposing counsel have been involved together in 15 to 20 cases. This, too, is a complete misrepresentation of the record, which contains opposing counsel's statement that he "bumped into" and had "been in cases together 15 or 20 times" with the *Appeal Board's legal advisor*—not the arbitrator.

11

vacating the Appeal Board's ruling pursuant to the California Arbitration Act (the CAA) (Code Civ. Proc., § 1280 et seq.), and (2) otherwise constitutes evidence of bias against him under general due process principles.

We reject each of Nowzari's arguments.

First, Nowzari cannot rely upon the CAA provisions that mandate vacating an arbitral award on the basis of an arbitrator's failure to make disclosures mandated by the CAA. (See Code Civ. Proc., §§ 1281.9, subds. (a)(3), (a)(4), (a)(6), (d) [disclosure requirements], 1281.91, subd. (a) [mandatory disqualification of arbitrator for failure to disclose], 1286.2, subd. (a)(6)(A) [mandatory vacation of arbitration award for failure to disclose]; see also *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*); *Sitrick*, *supra*, 89 Cal.App.5th at p. 1065.) That is because the CAA, by its terms, only applies to "*contractual* arbitration." (Code Civ. Proc., § 1281; *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342, italics added; *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 146.) The use of an arbitrator in this case was *not* the result of any contract between Nowzari and anyone else; indeed, because the Bylaws only provided for a hearing before the judicial review committee for the types of charges against Nowzari,[6] the use of an arbitrator in this case was *solely* a function of Nowzari's entitlement to do so

---

[6] For less severe restrictions against a physician not applicable here, the Bylaws require arbitration and the Medical Executive Committee unilaterally designates the arbitrator.

under section 809.2.[7]  Although the CAA applies when a statute
mandates that the parties agree to contractual arbitration (see
*Mercury*, at pp. 341-342, 347; *Pilimai v. Farmers Ins. Exchange
Co.* (2006) 39 Cal.4th 133, 141, 144), the CAA does not apply
where, as here, the statute does *not* require contractual
arbitration.  This is why our Supreme Court in *Natarajan v.
Dignity Health* (2021) 11 Cal.5th 1095 (*Natarajan*) recently held
that the CAA's disclosure requirements do not apply to hearing
officers used in lieu of arbitrators under the very same peer
review statutes at issue in this case.  (*Id.* at pp. 1104-1106.)

Second, Nowzari has failed to meet the residual due process
standard for disqualification.  Due process guarantees an
"impartial decision maker," which is violated where there is
"'actual bias'" or where there is a "'situation [in] which human
experience teaches that the probability of actual bias is too high
to be constitutionally tolerable.'"  (*Natarajan, supra,* 11 Cal.5th
at pp. 1106-1107.)  The "mere suggestion" of actual bias "is not
sufficient" for disqualification.  (*Hongsathavij v. Queen of
Angels/Hollywood Presbyterian Medical Center* (1998) 62
Cal.App.4th 1123, 1142.)  Nowzari's showing falls short of this
standard.  All he has established is that the arbitrator and
opposing counsel had two prior professional interactions roughly
17 years and five years prior to the current proceeding; given that
"'arbitrators are selected for their familiarity with the type of . . .
dispute involved'" and thus are not "'expected to be entirely

_____

[7]     Nowzari is accordingly incorrect when, as he did at oral
argument, he characterized the parties' selection of an arbitrator
as constituting contractual arbitration because the parties "opted
out" of the Bylaws.  Arbitration outside of a contract's terms is
*not* arbitration pursuant to that contract.

13

without business contacts in [a] particular field'" (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 959, overruled on other grounds in *Haworth*, *supra*, 50 Cal.4th at p. 382, fn. 6; *Merit Ins. Co. v. Leatherby Ins. Co.* (7th Cir. 1983) 714 F.2d 673, 679 [acknowledging "tradeoff between impartiality and expertise"]), this showing is neither proof of actual bias nor a situation in which the probability of actual bias is exceedingly high. Nowzari seeks to buttress his inadequate showing by boldly asserting in his appellate briefs that these two interactions are "only the tip of the iceberg," that the arbitrator and opposing counsel have a "long hand-in-glove working relationship," have a "long, ongoing and incestuous history," and are "budd[ies] in crime'"—and that the arbitrator otherwise engaged in "shenanigans" evincing a "predispos[ition] to rule for" the Medical Executive Committee— but these assertions are nothing more than hyperbolic speculation lacking any evidentiary foundation whatsoever.

Nowzari resists our conclusion with two further arguments.

First, he argues that *Natarajan* is not identical to this case because it held that the CAA did not apply to a *hearing officer* under the peer review statutes; thus, Nowzari continues, it did not speak to whether the CAA applies to an *arbitrator* under those statutes. This is true, but irrelevant. In either instance, the applicability of the CAA turns on the same question: Is the arbitration pursuant *to a contract*? Where, as in *Natarajan* and as in this case, the answer is no, the CAA does not apply.

Second, Nowzari argues that he "would never have agreed" to the arbitrator had the arbitrator disclosed his prior two interactions with opposing counsel. Not only is this argument irrelevant to the applicability of the CAA or the constitutional test for bias, it is also belied by Nowzari's contemporaneous

14

consent to the use of the arbitrator despite being aware of the arbitrator's prior work "principally on the side of representing medical staff."

## B.     *Alleged ex parte communications*

Nowzari argues that the Appeal Board erred in rejecting his claim that the arbitrator had impermissible ex parte communications with opposing counsel.  The sole evidence Nowzari offered of these impermissible communications was the declaration of his counsel, in which counsel stated that the arbitrator and opposing counsel had a "separate Zoom conference" during the hearing.  Counsel's statement was based on counsel's observation of the arbitrator looking at something off-screen and moving his lips at the same time opposing counsel was doing the same, along with his perception that the two seemed to be moving their lips in an alternating fashion rather than at the same time.  Given that there are roughly eight billion people on earth, counsel's supposition that the arbitrator and opposing counsel were talking *to each other* in the middle of the hearing—when such communications would be a staggering ethical breach for each of them—is little more than """imagination, speculation, supposition, surmise, conjecture, or guesswork""""; whatever label we give it, it is *not* evidence because the inference that jumps from their mouths moving to them engaging in impermissible ex parte communications is not a reasonable one.  (*People v. Davis* (2013) 57 Cal.4th 353, 360; *People v. Hughes* (2002) 27 Cal.4th 287, 365 ["'[a]n inference is not reasonable if it is based only on speculation'"].)  And even if it were, it was flatly contradicted by the statements of the arbitrator and opposing counsel, both of whom vehemently denied talking to one another.  The Appeal Board credited their

15

testimony over Nowzari's counsel's, and we are not at liberty to reweigh that credibility finding.  (*In re Caden C.* (2021) 11 Cal.5th 614, 640 (*Caden C.*).)  Nowzari's final argument is that the only reason the Appeal Board and the trial court rejected his counsel's declaration is because they, too, are part of a massive, clandestine conspiracy against him; this, too, is nothing but speculation.[8]

### C. *Substantial evidence*

Nowzari finally urges that substantial evidence does not support the *arbitrator*'s findings that the Medical Executive Committee's restrictions on his privileges were reasonable and warranted.  We reject this argument for two reasons.  First, Nowzari aims his challenge at the wrong entity; our task, as noted above, is to review the ruling of the Appeal Board, not the arbitrator.  Second, and more to the point, his challenge lacks merit.  The Appeal Board upheld the Medical Executive Committee's summary suspension and restriction decisions after necessarily concluding that the opinions of the urology subcommittee, the Medical Executive Committee, an independent reviewer, and PACE—all of whom expressed concerns with Nowzari's medical judgment—had greater credibility and thus were entitled to greater weight than the opinion of Nowzari's expert, who opined that Nowzari was an exemplary physician who did nothing wrong.  Indeed, Nowzari acknowledges in his appellate briefs that the decision restricting his privileges "may have basis in some of the evidence."  This is fatal to his claim.  Rather than demonstrate that every single one of the multiple

---

8      Nowzari also likens the trial court to a Holocaust denier. This type of gross and baseless hyperbole is unfounded, disrespectful, offensive, and unethical.

16

opinions supporting the Appeal Board's decision is factually or methodologically invalid (and hence entitled to *no* weight), Nowzari merely urges us to credit his expert over the competing experts. At bottom, he is asking us to reweigh the Appeal Board's credibility call and hence reweigh the evidence. This is beyond our purview when reviewing the ruling for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at p. 640 [we do not "'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts'"].)

## II. Attorney Fees Award

Nowzari argues that the trial court erred in awarding the Hospital and the Medical Staff $47,513.67 in attorney fees.

The Business and Professions Code statutes governing medical peer review empower a trial court, when litigating a writ petition challenging a peer review decision, to award costs, including "reasonable" attorney fees, to the party who "substantially prevail[s]" on any claim that is "frivolous, unreasonable, without foundation, or in bad faith." (§ 809.9.) This is a *sanctions* provision. (*Mir v. Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1485.) As pertinent here, a claim is "without foundation" where it is factually or legally "baseless, groundless, or without support" (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30-31 (*Smith II*)), and a claim is "unreasonable" where no reasonable attorney would find it tenable[9] (*Smith II*, at p. 32). Whether a physician brought or litigated a claim that was without foundation or was

---

[9] There is some debate over whether the more forgiving negligence standard applies. (*Smith II*, *supra*, 188 Cal.App.4th at p. 32.) However, we will sidestep that debate by applying the more stringent standard.

17

unreasonable is determined objectively, and therefore constitutes a question of law we review independently on appeal. (*Id.* at pp. 28, 31.)

We independently conclude that the trial court properly determined that two of Nowzari's claims in his petition—namely, his claims that (1) the arbitrator engaged in impermissible ex parte communications, and (2) substantial evidence did not support the arbitrator's findings—were "without foundation" or "unreasonable." The Appeal Board had already explicitly found that Nowzari's claim regarding ex parte communications lacked any evidentiary basis; "without direct or circumstantial evidence to support it," the claim was "without foundation" (*Smith II*, *supra*, 188 Cal.App.4th at p. 31). Nowzari's substantial evidence challenge was also "unreasonable" because, as noted above, it assailed the wrong administrative body's determination and did no more than implore the trial court to impermissibly reweigh the evidence in his favor. Because the trial court concluded that two of Nowzari's three challenges satisfied the standard for the award of sanctions, the court permissibly awarded the Hospital and the Medical Staff two-thirds of the fees it requested—namely, $47,513.67 instead of $71,270.50.

Nowzari responds with four arguments.

First, he argues that the Hospital and the Medical Staff waived their right to request attorney fees because they did not pray for them in their answer to his writ petition. Nowzari has the law wrong. Except in cases of default (which is not implicated here), attorney fees need not be pleaded. (*Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 142, fn. 3; see also *Washburn v. City of Berkeley* (1987) 195

Cal.App.3d 578, 583-584 [failure to request fees in writ of mandate petition did not constitute waiver of right to such fees].)

Second, he argues that the trial court was divested of jurisdiction to award attorney fees once Nowzari filed his notice of appeal from the judgment denying his writ petition. This argument is frivolous. The filing of a notice of appeal does not divest a trial court of jurisdiction over "collateral matter[s]," and attorney fees are the quintessential "collateral matter." (Code Civ. Proc., § 916; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 636-637; *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368-369, superseded by statute on other grounds as stated in *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1197; *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 360.)

Third, he argues that the trial court never found his claims to be frivolous or in bad faith. Such findings are not required. The statute lists the four bases for fees *in the alternative*. (§ 809.9; *Smith II*, *supra*, 188 Cal.App.4th at pp. 29-30.)

Fourth and lastly, Nowzari argued—for the first time at oral argument—that a trial court's award of sanctions under section 809.9 must be an all-or-nothing decision, and that the trial court erred in awarding a reduced amount of the requested sanctions to reflect its finding that only two out of Nowzari's three claims "lacked foundation" or were "unreasonable." This argument is meritless, for it ignores the basic principle that trial courts possess the discretion, when awarding fees as a sanction, to reduce those fees "in order to reach a reasonable award." (§ 809.9 ["reasonable attorney's fee[s]"]; see, e.g., *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 791 ["the principles of reasonableness and causation" impose a duty on the trial court to, in its discretion,

19

"reduce the amount of fees and costs requested" to "fix a reasonable amount" "incurred as a result of discovery abuse"].)

**DISPOSITION**

The judgment and postjudgment order are affirmed.  The Hospital and the Medical Staff are entitled to their costs on appeal.[10]

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

---

[10]     The Hospital and the Medical Staff have requested that we direct the trial court to further award them attorney fees incurred on appeal.  We defer to the trial court to determine that issue in the first instance.